MOYERS et al. v. OGLE, No. 1.—148 S. W. (2d) 637.

Eastern Section. October 26, 1940.

Petition the Certiorari denied by Supreme Court, March 1, 1941.

William C. Fitts, Jr., Chas. J. McCarthy, and Robert H. Marquis, all of Knoxville, for plaintiff in error Tennessee Valley Authority. R. L. Ogle, of Sevierville, for defendant in error.

McAMIS, J.  Estel Ogle instituted this suit before a justice of the peace to recover the value of a horse killed by coming in contact

with one of the wires of a transmission line owned by the Tennessee Valley Authority. J. J. Moyers was also made a defendant, and judgment went against him and the Tennessee Valley Authority in the Circuit Court for the value of the horse which was fixed at $250. Moyers has not appealed. The Tennessee Valley Authority filed a motion for a new trial which was overruled, and it has appealed in error to this court.

The circuit judge, trying the case without a jury, found that the line was negligently maintained, in that uninsulated wires were allowed to extend through or near the branches of trees at a point where it crossed over a public road or highway and, as we understand the court's finding, that the proximate cause of the injury to plaintiff's horse was the line coming into contact with the top of a spruce tree creating a short circuit and causing the line to burn in two and fall over the highway. The court specifically found, however, that the failure of defendant, Tennessee Valley Authority, to cut off the current when notified that the wire was down did not constitute the proximate cause of the injury, since the horse was killed only a few minutes after notice was received.

On October 9, 1939, plaintiff was engaged in the business of furnishing saddle horses for hire near Gatlinburg, Tennessee. On the date mentioned he hired three horses to three young ladies. When the riding party reached a point on the highway in front of the defendant Moyers' property, they were notified that the wire was down and extending across the highway. Moyers undertook to assist one of the riders across the point of danger by leading her horse, still mounted, under the wire, which was hanging some few feet above the roadbed. Moyers testified that while being led under the wire the horse threw his head to one side and one ear came in contact with the wire, killing him instantly. Liability against Moyers is based upon a charge that he was guilty of negligence in attempting to lead the horse under the wire with full knowledge that it was charged with electricity.

Some months prior to the date in question, the Tennessee Valley Authority acquired the transmission line from a private operator, and, it appears, made regular inspections thereafter for the purpose of determining the need for trimming trees along and near the line. It does not appear definitely when the spruce tree in question was trimmed but it does appear from the proof without question that it had been trimmed at some time in the past. The evidence in behalf of plaintiff shows that limbs had grown up since it was trimmed and extended between and around the two wires. The witness Brown testified that he had seen branches of the spruce tree come in contact with the wire and had seen the branches "blaze" when the wind would blow them against the wires. There is some evidence introduced in behalf of the Tennessee Valley Authority

that the wires were some three or four feet above the top of the spruce tree but none of these witnesses appear to have been familiar with conditions at this exact location at the time in question. We find no sufficient reason for rejecting the testimony of Brown upon this issue though we think it is clear from all the proof that the wires prior to the time in question came in contact only with small branches of the spruce tree and did not come in contact with the trunk or rigid portions of the tree and its branches.

At the point in question the transmission line was supported by two poles three hundred and twenty feet apart. A diagram of the situation shows that the spruce tree was one hundred and ten feet away from the nearest pole. Between the nearest pole and the spruce tree was a sycamore tree the branches of which extended above the transmission line shown to have been approximately twenty-five feet above ground. Shortly before plaintiff's horse was killed, Moyers directed Brown to cut a limb from the sycamore tree. The uncontradicted proof shows that this limb was ten or fifteen feet above the nearest wire but when it fell it lodged upon the wires. Brown thereupon struck at the limb in an attempt to dislodge it. Brown says the limb was on the wire for a minute or so before it fell. There can be no question from the proof that the weight of the limb pulled one of the wires down upon the top of the spruce tree thus creating a short circuit and causing the wire to burn in two at that point.

Brown went to the home of a neighbor some one hundred yards or more away and telephoned the Sevierville office of the Tennessee Valley Authority. When he returned a few minutes later the horse had already been killed indicating, as defendant insists, that there was not sufficient time to have cut off the current at the power station two miles out of Sevierville before the horse was killed.

Assuming, under the facts stated, that T. V. A. was guilty of some negligence in allowing tree branches to grow up around an uninsulated transmission line, we have been forced to conclude that two other efficient intervening causes proximately resulted in the death of plaintiff's horse. At most, defendant's negligence only created a condition of potential danger which was followed by two other negligent acts which common prudence and foresight did not require defendant to anticipate.

We think an ordinarily prudent person would not have anticipated that some one, without notice to it to cut off the current, would attempt to cut a limb immediately over the line without taking some precaution to prevent it coming into contact with the wires. Nor do we think defendant should have anticipated that if the line should become severed while charged, animals would be deliberately led into such close proximity to the wire as to make

contact with it. In other words, we think defendant was not bound to anticipate such gross negligence on the part of others.

■ Attempts to distinguish between proximate cause and an independent intervening cause, often a closely-drawn issue, have been the cause of much perplexity, but it is quite generally held that one who did nothing more than furnish the condition or give rise to the occasion by which an injury was made possible is not liable if there intervenes between such prior act creating the condition and the injury a distinct and unrelated but efficient cause of the injury. Washington v. Baltimore, etc., R. Co., 17 W. Va., 190, 196; Eberhardt v. Glasgow Mut. Tel. Assoc., 91 Kan., 763, 765, 139 P., 416.; Williams v. Weidman, 135 Mich., 444, 97 N. W., 966, 106 Am. St. Rep., 400; Alabama Power Co. v. Cooper, 229 Ala., 318, 156 So., 854; Hammett v. Birmingham Railway, etc., Co., 202 Ala., 520, 81 So. 22; Louisville & Nashville Railroad Co. v. Maddox, 236 Ala., 594, 183 So., 849, 118 A. L. R., 1332.

■ If an independent negligent act sets into operation the circumstances which result in injury because of the prior dangerous condition, such subsequent act is the proximate cause of the resulting injury. Walters v. Denver, etc., L. Co., 12 Colo. App., 145, 54 P., 960; Steenbock v. Omaha Country Club, 110 Neb., 794, 195 N. W., 117; Willis v. Armstrong County, 183 Pa., 184, 38 A., 621; St. Louis South Western R. Co. v. Pool, Tex. Civ. App., 135 S. W., 641, 647; Smith v. Texas, etc., R. Co., 24 Tex. Civ. App., 92, 58 S. W., 151; Elliott v. Allegheny County Light Co., 204 Pa., 568, 54 A., 278.

In the last of the cases cited, a painter fell from a ladder and clutched at an uninsulated electric wire. The court held that the resulting injuries were proximately caused by the fall from the ladder and that the uninsulated condition of the wire was not the proximate or efficient cause of the injuries sustained.

■ ■ Where the condition negligently created rendered it impossible to avoid injury from another contributing cause or the injury was such as might have been anticipated, the original condition negligently created will be considered the proximate cause notwithstanding the intervening agency. .This rule of foreseeable or probable consequences, as related to proximate cause, was outlined in Moody v. Gulf Refining Co., 142 Tenn., 280, 218 S. W., 817, 820, 8 A. L. R., 1243, in the following language: ''An injury that is the natural and probable consequence of an act of negligence is actionable, and such an act is the proximate cause of the injury. But an injury which could not have been foreseen nor reasonably anticipated as the probable result of an act of negligence is not actionable and such an act is either the remote cause, or no cause whatever, of the injury.''

■ ■ One is bound to take note of what all men know that animals act upon unreasoning and instinctive impulses, and it is

held that the act of an animal left to follow his own impulses will not break the line of causation and become the efficient intervening cause which will relieve the original negligent actor. City of Ft. Worth v. Patterson, Tex. Civ. App., 196 S. W., 251.

In this case if the line had been severed as a result of defendant's negligence in failing to keep branches or stubs of trees coming into contact with it, and plaintiff's horse, independent of any human agency, had strayed into the wire and been electrocuted, we think there could be no question but that defendant would be liable. But such is not the case here. Whatever conditions at the spruce tree may have been, it is clear that the wire would not have fallen except for the weight of the sycamore limb cut by Brown and it is equally clear that the horse would not have come into contact with the wire except for the act of Moyers in leading it into the wire. Thus, to apply the principle of foreseeable consequences, defendant cannot be held to the extraordinary duty of foreseeing and anticipating two negligent and intervening human acts which succeeded, in point of time, its negligence in failing to trim the right-of-way.

A similar case was before the court in Kentucky Utilities Co. v. Woodrum's Adm'r, 224 Ky., 33, 5 S. W. (2d), 283, 288, 57 A. L. R., 1054, where the court said:

"It is also argued by counsel that it was the duty of the utilities company to ascertain that there was no decaying tree standing close enough to the line to endanger the line. That argument would have some force if such a tree had fallen upon the line as the result of its decayed condition, but such is not the case here. The tree fell on the line because of the act of those who were thereafter killed or injured by reason of the falling of the tree on the line. . . .

"There is nothing in the evidence in the instant cases to show that the wire would have broken but for the falling of the tree, and the falling of the tree was the voluntary act of those who received their death because of the breaking of the wire. The question of negligence based on the ground of faulty construction or maintenance of the wire should not have been submitted to the jury, as there was no evidence to take the case to the jury on that point."

Defendant also relies upon the case of Seith v. Commonwealth Electric Co., 1909, 241 Ill., 252, 89 N. E., 425, 430, 24 L. R. A. (N. S.), 978, 132 Am. St. Rep., 204. In that case defendant maintained its wires over the streets of the City of Chicago. One of the wires broke because of the violation by defendant of one of the terms of the license. As plaintiff approached, the wire was lying charged in the street and a policeman struck it with his club causing it to come in contact with, and burn, the plaintiff. Judgment for plaintiff was reversed, the court being of opinion that, although guilty of negligence, defendant was not bound to anticipate the act of the police-

688

man in striking the fallen wire and that the act of the policeman and not defendant's negligence was the proximate cause of plaintiff's injuries. In the course of the opinion the court said:

"The negligence of the defendant produced a condition which made the injury possible, but the injury would not have occurred but for the independent act of the policeman. That act was an independent cause of the injury, by one for whose act the defendant was not responsible, and by one over whom it had no control."

We think the same reasoning and the principle applied in these cases and in Moody v. Gulf Refining Co., supra, are applicable to this case and that the judgment below must be reversed and the suit dismissed as to the Tennessee Valley Authority. Costs will follow.

Portrum and Ailor, JJ., concur.