# WALLACE v. ELECTRIC POWER BOARD et al.—259 S. W. (2d) 558.

Eastern Section.   March 11, 1953.

Petition for Certiorari denied by Supreme Court, June 5, 1953.

528

Joe E. Van Derveer, of Chattanooga, for plaintiff in error.

William F. Chamlee, C. G. Milligan and Spears, Reynolds, Moore & Rebman, all of Chattanooga, for defendants in error.

McAMIS, J. Plaintiff in error, Alfred E. Wallace, sued the Electric Power Board of the City of Chattanooga, Southern Bell Telephone and Telegraph Co., Inc., and Mr. and Mrs. R. L. Mongar for personal injuries sustained as the result of being struck by a falling telephone pole at about 11:00 p. m. on January 10, 1952. At the conclusion of his proof in chief, plaintiff took a voluntary nonsuit as to Mr. and Mrs. Mongar and, at the same time, the court sustained motions for a directed verdict in behalf of the Power Board and the Telephone Company. The present appeal resulted.

The facts are peculiar and somewhat complicated and the court is indebted to counsel for both plaintiff and the defendants for the excellent briefs filed and for the oral arguments made by counsel for the respective parties.

The declaration charges that plaintiff was injured by the falling of a pole installed and maintained by the defendants Electric Power Board and Telephone Company at the southeast corner of the intersection of East Third Street and Willow Street in Chattanooga, the specific charges of negligence being that (1) the pole was in a decayed and rotten condition, (2) was improperly or insufficiently "guyed" and (3) was located on the curb or very close to the traveled portion of the two streets. By special pleas, defendants denied the charges of negligence and interposed the defense that plaintiff, in any event, was injured by the intervening acts of the participants in two collisions occurring at the intersection immediately before the pole fell; that, consequently, any

negligence in the maintenance of the pole was not the proximate, efficient and producing cause of plaintiff's injuries.

The record shows that Third Street runs east and west and intersects Willow Street at right angles. Immediately preceding the accident, plaintiff was proceeding in his automobile, after dark, east on Third Street. As he approached the intersection with Willow Street, he saw another automobile also going east collide with an automobile going north on Willow Street. He then parked his automobile at a point some distance west of the intersection and walked up to the intersection in order to give assistance to occupants of the two cars.

The record shows that before plaintiff reached the intersection, the two cars had come to rest on the northeast corner of the intersection in front of a business building, one of the cars having cut off near the ground a stub pole located at that corner of the intersection to which was attached a guy wire supporting the pole already mentioned at the southeast corner of the intersection. As a result the stub pole fell into the street and a guy wire leading to the pole on the southeast corner of the intersection was caused to sag within three or four feet of the pavement. When plaintiff had gotten well into the intersection he saw the car of Mr. and Mrs. Mongar approaching from the east on East Third Street at a speed of 25 or 30 miles per hour. Apparently realizing the danger of injury to himself by reason of the presence of the stub pole and guy wire in the street, plaintiff immediately turned and started back toward his car but before he was able to clear the intersection the Mongar car proceeded into the intersection and became entangled in the guy wire leading to the pole of defendants on the southeast corner of the intersection. The momentum of

the car caused it to topple and fall into the street, striking plaintiff a heavy blow on the head and face.

There is material evidence from which a jury could conclude that the pole which struck plaintiff was in a severely decayed condition and that proper practice in the construction of such lines on public streets would have dictated the use of a guy wire on the east of the pole to compensate for stress resulting from wires leading off to the west and particularly to a street light in the center of the intersection. Whether the court erred in taking the case from the jury depends upon whether or not the injury to plaintiff was caused by the rotten condition of the pole and the absence of a guy wire on the east or by the removal of the stub pole and the sagging of the guy wire when the stub pole was struck by one of the cars in the collision, coupled with the act of the driver of the Mongar car in proceeding into the intersection. We hold that the question was properly resolved by the trial court in directing a verdict for defendants.

In the leading case of Moody v. Gulf Refining Co., 142 Tenn. 280, 218 S. W. 817, 820, 8 A. L. R. 1243, it was said:

" 'An injury that is the natural and probable consequence of an act of negligence is actionable, and such an act is the proximate cause of the injury. But an injury which could not have been foreseen nor reasonably anticipated as the probable result of an act of negligence is not actionable and such an act is either the remote cause, or no cause whatever, of the injury.' "

The facts of that case are so well known that to comment upon them at length would be superfluous. It is sufficient to say that the defendant in that case allowed highly volatile gasoline to be exposed in the presence of small boys who struck a match and ignited it while the

attendant was temporarily absent on a mission in connection with his duties. It was held that even though it be conceded that the defendant might have been guilty of some negligence, the act of the boys in throwing a match into the gasoline was not such as could have been reasonably anticipated, since it was not known that the boys had matches or were smoking and that their intervening act was the proximate cause of the explosion. The opinion contains an exhaustive review of the authorities and an extended discussion of the principle of intervening cause to which we could add nothing. The rule was there laid down that a defendant will be relieved of an original act of negligence provided harm would not have resulted from it except for the interposition of some new and independent cause which interrupted the natural sequence of events and caused the injury. As appears from the opinion in that case as well as from the holdings in numerous other cases which might be cited the problem, in the final analysis, is simply to determine which act was the proximate cause of the injury.

The general rule is, as stated in Moyers v. Ogle, 24 Tenn. App. 682, 686, 148 S. W. (2d) 637, that if an independent negligent act sets into operation the circumstances which result in injury because of an already existing dangerous condition, such subsequent act is the proximate cause of the injury. See numerous cases cited in the opinion. However, there are exceptions to the general rule and respectable authority for holding that the negligence of the first person in fault will be regarded as the proximate cause of an injury wherever the negligent acts of the subsequent wrongdoer are such as a man of ordinary experience and sagacity, acquainted with all the circumstances, reasonably should have anticipated. Kelsey v. Rebuzzini, 87 Conn. 556, 89 A. 170, 52 L. R. A.,

N. S., 103. But where the negligence of a third person is of an unusual character and the defendant's act or omission alone would not have produced the injuries to the plaintiff, the defendant will not be liable. Louisville Home Telephone Co. v. Gasper, 123 Ky. 128, 93 S. W. 1057, 9 L. R. A., N. S., 548.

Another principle applicable in such cases is that liability cannot be predicated on a prior or remote cause which merely furnished the condition or occasion for an injury resulting from an intervening unrelated and efficient cause; but a condition from which injury might have been anticipated, under known prevailing conditions, will be the proximate cause notwithstanding subsequent acts of others. 65 C. J. S., Negligence, Sec. 111, page 693.

■■ Applying these principles to the facts of the present case and assuming negligence in the particulars charged in the declaration, we think reasonable minds must conclude that the second pole fell as the result of fortuitous circumstances which defendants could not reasonably be required to foresee. We recognize that it is not essential to liability that the precise manner in which an injury is inflicted be foreseeable but only that there was substantial likelihood that the negligence charged would result in " 'harm in the abstract' ". Spivey v. St. Thomas Hospital, 31 Tenn. App. 12, 211 S. W. (2d) 450, 456.

But we must remember that there was no defect in the stub pole or in the guy wire which first fell into the street. After that occurred the pole which struck plaintiff was still standing even without the support of the guy wire. It fell only because of the fortuitous circumstance that, at that particular time, the driver of the Mongar car entered the intersection and, failing to see the guy wire or the stub pole or to slacken the speed of the car, caused

the guy wire to become entangled with the car. In this most unusual manner sufficient force was exerted at the top of the pole to cause it to topple and strike plaintiff. It is thus shown that the pole did not fall because of an ordinary exigency of travel on the street but due to a chain of circumstances which no reasonable person could foresee. To require telephone and electric companies to guard against such accidents would virtually make them insurers against any injury due to the presence of their lines along streets and highways.

For the reasons indicated, the assignments must be overruled and the judgment affirmed. Costs will be adjudged to plaintiff in error and surety.

Hale and Howard, JJ., concur.