# FRIENDSHIP TELEPHONE COMPANY v. MRS. LAVERGNE AVERY RUSSOM.—309 S. W. (2d) 416.

Western Section, Jackson. September 13, 1957.

Petition of Certiorari denied by Supreme Court February 6, 1958.

442

J. Frank Warmath and G. Griffin Boyte, Humboldt, Robert G. McLean, Alamo, for Friendship Tel. Co.

Theo. J. Emison and J. B. Avery, Jr., Alamo, for Mrs. Lavergne Avery Russom.

FELTS, J. This was an action brought by the widow of J. D. Russom for his wrongful death alleged to have been caused by the negligence of the Friendship Telephone Company, hereinafter called defendant. Its demurrer to her declaration was overruled, it pleaded over, and there was a verdict and judgment for her for $30,-000. Defendant appealed in error and has assigned six errors.

Its first assignment is: "The Court erred in overruling defendant's demurrer, on the grounds that the declaration on its face did not state a cause of action, because the declaration on its face showed that the defendant, if guilty of any negligence, could not reasonably foresee that injury would result, and that the proximate cause of the accident was an intervening force."

In considering this assignment, we must take the facts stated in the declaration as true, with every intendment in their favor; for that is the effect of the demurrer. Jackson v. B. Lowenstein & Bros., Inc., 175 Tenn. 535, 542, 136 S. W. (2d) 495. The facts averred in the declaration were these:—

Deceased was operating a motor grader for the Highway Department of Crockett County on one of its unpaved, public highways known as the Blue Bird Road.

Defendant owned and operated a telephone line along this road. At the point of the accident defendant had erected its telephone pole upon a bank a few feet above and north of the north edge or ditch of the road, with a guy wire tied to the top of the pole and running obliquely down to the ditch to an anchor rod and an iron disc or a "dead-man" buried beneath the ditch.

At the time of the accident (July 1955) defendant had allowed this pole to become decayed and defective, and there was upon the bank a dense thicket concealing the pole and guy wire so that neither could be seen from the highway. Deceased was driving the motor grader, a heavy machine, westward along the north side of the road, cleaning out the ditch, when the grader blade struck the buried anchor rod of the guy wire with such force as caused the pole to break in two in the middle, and the top end fell, struck deceased's head, broke his neck, and killed him instantly.

After stating these facts, the first count of the declaration charged that defendant had negligently installed and maintained its pole and fixtures in the manner described and so as to create an obstruction dangerous to travelers and highway employees who defendant knew were maintaining this road and its side ditches by use of the motor grader and other like machines; and that by this negligence defendant caused the death of deceased.

The second count charged that defendant, in the manner described, obstructed and endangered the ordinary use of the highway, in violation of the statute (T. C. A. sec. 65-2106); and that this negligence was the direct and proximate cause of the death sued for. The third count

alleged that the obstruction was a "death trap" and a public nuisance, and was the proximate cause of the death.

After the demurrer was overruled, plaintiff was permitted to add a fourth count charging that defendant knew of the work being done on this road by the highway employees, and was guilty of negligence in failing either to remove the obstruction or to notify them of the danger, and that this negligence caused the death.

The general principle is that the public are entitled to use the highway in all the usual modes of travel; and whoever obstructs and endangers such use, whether by intention or by negligence, is guilty of a public nuisance and is liable to any individual who suffers special damages therefrom. McHarge v. M. M. Newcomer & Co., 117 Tenn. 595, 608-612, 100 S. W. 700, 9 L. R. A., N. S., 298; Congreve v. Smith, 18 N. Y. 79, 82; 25 Am. Jur., Highways, secs. 272, 273, 288.

This principle extends to users of the highway "who stray a few feet from it inadvertently or in an emergency" (Prosser on Torts (2nd ed.) 492); and any obstruction over, under, or so near the highway as to endanger such users comes within this principle. Niblett v. Mayor, etc., of City of Nashville, 59 Tenn. 684, 688; City of Knoxville v. Baker, 25 Tenn. App. 36, 41, 150 S. W. (2d) 224; De Ark v. Nashville Stone Setting Corp., 38 Tenn. App. 678, 683-684, 279 S. W. (2d) 518, 521.

It is true defendant, under our statute (T. C. A. sec. 65-2105), had a right to construct and maintain its line along this highway, but it had no right to obstruct the

"ordinary use" of the highway (T. C. A. sec. 65-2106); that is, use by the public, as pedestrians, and in all the usual modes of travel and all kinds of vehicles, including those used by the county employees in maintaining the roads.

As stated, defendant erected its pole over the road, and strung its guy wire from the top of the pole diagonally down to the ditch to the anchor rod and disc buried under the ditch or north edge of the road. Defendant had allowed the pole to become decayed and it and the fixtures to be so concealed by the thicket that they could not be seen from the road. Such a hidden thing was an obstruction which was dangerous according to common experience and which might reasonably be foreseen as likely to cause injury to users of the highway.

In Franklin Turnpike Co. v. Crockett, 1854, 34 Tenn. 263, deceased, "a little excited by the use of spirits", was driving on the road, when his horse took fright and ran, and the wheel of his vehicle struck a telegraph pole, causing his death. The pole was in the "inner edge" of the ditch, but about two feet from the outer edge of the traveled part of the road. It was held that this pole might be found to endanger travel and to be a nuisance for which defendant would be liable.

In Stern v. International Ry. Co., 1917, 220 N. Y. 284, 115 N. E. 759, 2 A. L. R. 487, 492-493, plaintiff's intestate, while riding as a guest in an automobile on a street in Buffalo, was killed when the driver swerved and the car struck a trolley pole in the center of the street between the railway company's double tracks. The company had placed the pole there in 1889, by authority of the state Legislature and of the town council.

It was held, however, that since the automobile had changed the modes of travel and ''magnified the likelihood and dangers of collision'', the pole could be found to have become a dangerous obstruction and a nuisance; and that the defendants were liable—the railway company for maintaining the nuisance, the city for not abating it, and the owner of the car for his driver's negligence in striking the pole.

In Nelson v. Duquesne Light Co., 1940, 338 Pa. 37, 12 A. (2d) 299, 128 A. L. R. 1257, a guest in a car was killed when it struck a light pole. The pole was 5½ feet from the paved part of the street proper but within the adjoining paved area in front of a filling station. It was held that the pole was a dangerous obstruction and a nuisance; and that the city's negligence in permitting the nuisance was a proximate cause of the death and was not superseded by the intervening negligence of the driver of the car in striking the pole.

In Louisville Home Telephone Co. v. Gasper, 1906, 123 Ky. 128, 93 S. W. 1057, 9 L. R. A., N. S. 548, the telephone company strung its guy wire from the top of its pole down to the edge of a public alley and anchored it to a block in the ground. The wire was near a fence and its color so like that of the fence as to make it ''practically indiscernable''. A wagon was being rapidly driven in the alley, when its right rear hub collided with the guy wire, which caused it to overturn, strike, and seriously injure plaintiff, a pedestrian.

It was held that the company was guilty of negligence in maintaining its guy wire so as to constitute a dangerous obstruction in the alley; that such negligence was a proximate cause of plaintiff's injuries although such

injuries could not have been foreseen and would not have occurred but for the intervening negligence of the driver of the wagon; and that both the company and the owner of the wagon were liable to plaintiff for their concurring negligence.

So, we think that defendant's pole, decayed, overhanging the highway, with its fixtures concealed and buried at the edge of the highway, constituted a dangerous obstruction which could reasonably be foreseen as likely to cause injury to users of the highway; and that in maintaining this obstruction defendant was guilty of negligence which was the proximate cause of the injury and death of deceased.

Learned counsel for defendant, however, insist that assuming it was guilty of negligence in maintaining the situation described, still it is not liable for the injury to deceased because such injury could not reasonably have been foreseen as a probable result of such negligence.

Some authorities do apply foreseeability as one and the same test of two very different things, namely: (1) scope of duty and (2) extent of liability. "The measure of defendant's duty in determining whether a wrong has been committed is one thing; the measure of liability when a wrong has been committed is another". Mr. Justice Holmes, in Spade v. Lynn & Boston Ry. Co., 172 Mass. 488, 491, 52 N. E. 747, 748, 43 L. R. A. 832.

"What ought to have been reasonably anticipated 'goes to culpability, not to compensation' ". Lord Sumner, in Weld-Blundell v. Stephens [1920] A. C. 984 (quoted in Winfield on Tort (6th Ed. 77). "What the

defendants might reasonably anticipate is * * * only material with reference to the question whether the defendants were negligent or not, and cannot alter their liability if they were guilty of negligence''. Blackburn J., in Smith v. London S. W. Ry., (1870) L. R. 6 C. P. 14, 21.

The Smith case was approved in Re Polemis and Furness, Withy & Co., Ltd. [1921] 3 K. B. 560, which is now the law of England. Thurogood v. Van Den Berghs and Jurgens, [1951] 2 K. B. 537, 555. This view has been taken by many courts in the United States. An excellent statement of it was made by Justice Mitchell, in Christianson v. Chicago St. P. M. & O. Ry. Co., 1896, 67 Minn. 94, 97, 69 N. W. 640, 641, as follows:

" 'What a man may reasonably anticipate is important, and may be decisive, in determining whether an act is negligent, *but is not at all decisive in determining whether that act is the proximate cause of an injury which ensues.* If a person had no reasonable ground to anticipate that a particular act would or might result in any injury to anybody, then, of course, the act would not be negligent at all; but, *if the act itself is negligent, then the person guilty of it is equally liable for all its natural and proximate consequences, whether he could have foreseen them or not.* Otherwise expressed, the law is that if the act is one which the party ought, in the exercise of ordinary care, to have anticipated was liable to result in injury to others, then he is liable for any injury proximately resulting from it, although he could not have anticipated the particular injury which did happen. *Consequences which follow in un-*

*broken sequence, without an intervening efficient cause,* from the original negligent act, *are natural and proximate;* and for such consequences the original wrongdoer is responsible, even though he could not have foreseen the particular results which did follow' " (quoted and italics supplied in Anderson v. Theisen, 1950, 231 Minn. 369, 371, 43 N. W. (2d) 272, 273.

This view has been adopted in Tennessee. In Inter-City Trucking Co. v. Daniels, 181 Tenn. 126, 131, 178 S. W. (2d) 756, 758, the Court, *per* Justice Chambliss, said: "that in a tort action for damages liability is not limited to injuries resulting which were foreseen by the tort-feasor, but—adopting, in substance, an apt phrase employed by learned English Judges—extends to whatever injuries were within the reasonable range of the risk created by the negligent act, or omission of the defendant".

Following that case and other like authorities, in Spivey v. St. Thomas Hospital, 31 Tenn. App. 12, 211 S. W. (2d) 450, we undertook a discussion, with collation of some of the leading authorities. That case has been approved in later cases, including these: International Harvester Co. v. Sartain, 32 Tenn. App. 425, 460, 222 S. W. (2d) 854; Kingsport Utilities, Inc., v. Brown, 201 Tenn. 393, 299 S. W. (2d) 656, 659; City of Chattanooga v. Rogers, 201 Tenn. 403, 299 S. W. (2d) 660, 663.

Under these authorities, it was not necessary that defendant should have been able to foresee the particular harm that befell deceased. It was enough that defendant could have reasonably foreseen that some such harm of like general character might result to him from its

negligence, and that the harm which did result was within the reasonable range of the risk created by such negligence. Such being the case, the negligence was the legal or proximate cause of the injury.

Defendant contends, however, that, even if it were negligent, its negligence did not cause the injury to deceased but at most did nothing more than furnish a condition or give rise to an occasion by which such injury was made possible; and that the deceased's own act in driving the motor grader against the anchor rod was an intervening, efficient cause of his injury and death, which superseded defendant's negligence and absolved it from liability.

Some cases do draw a distinction between the "cause" of harm and the "condition" in which the harm happened. It is said that if defendant's act created only a passive, static condition which made the harm possible, he is not liable. But on the issue of causation, "it is impossible to distinguish between passive situations and active forces". After saying this, Prosser goes on to say:

"If the defendant spills gasoline about the premises, he creates a 'condition'; but his act may be culpable because of the danger of fire. When a spark ignites the gasoline, the condition has done quite as much to bring about the fire as the spark; and since that is the very risk which the defendant has created, he will not escape responsibility" (Prosser on Torts (2nd Ed.) 225).

"So far as the distinction has any validity at all, it must refer to the type of case where the forces

set in operation by the defendant have come to rest in a position of apparent safety, and some new force intervenes. But even in such cases, it is not the distinction between 'cause' and 'condition' which is important, but the nature of the risk and the character of the intervening cause" (Prosser on Torts (2nd Ed.) 225).

■ Where defendant is under a duty to other persons to take care against a particular risk and in breach of such duty creates a situation of danger to them from such risk, his conduct will be regarded as the cause of the injury to them even though such injury was realized through the intervening acts of them or of others, unaware of such danger.

To cite a few illustrations: Franklin Turnpike Co. v. Crockett, supra; Stern v. International Ry. Co., supra; Nelson v. Duquesne Light Co., supra; Louisville Home Telephone Co. v. Gasper, supra; MacPherson v. Buick Motor Co., 217 N. Y. 382, 111 N. E. 1050, L. R. A. 1916F, 696 (driving a car unaware of its defect); Fairbanks, Morse & Co. v. Gambill, 142 Tenn. 633, 222 S. W. 5 (kindling fire with what was thought to be coal oil but was in fact gasoline); Levitan v. Banniza, 34 Tenn. App. 176, 236 S. W. (2d) 90 (handling gun unaware it was loaded).

The rule is well stated by Prosser on Torts (2nd Ed.) 266, as follows:

"An intervening cause is one which comes into active operation in producing the result after the actor's negligent act or omission has occurred.

"The defendant ordinarily will not be relieved of liability by an intervening cause which could reason-

ably have been foreseen, nor by one which is a normal incident of the risk created."

■ Defendant owed a duty to users of the road to take care not to endanger them from the condition of its facilities; and such duty extended to highway employees who defendant knew were using machines. Such use by them was foreseeable and within the range of the risk created by defendant's negligence; and when the injury to plaintiff was realized through this risk, he being unaware of the danger, defendant's negligence was the legal and proximate cause of such injury. See authorities, supra.

Defendant relies on Moody v. Gulf Refining Co., 142 Tenn. 280, 218 S. W. 817, 8 A. L. R. 1243. This case is not in point. A colored boy, without fault on his part, let gasoline overflow and spill on the ground. Two boys, 12 to 14 years old, knowing it was gasoline, deliberately threw lighted matches into it, and caused the fire which destroyed plaintiff's building. The Court held that there was no negligence on the part of defendant, which was conclusive of the case, but went on to say that if defendant was negligent, it was not liable because the proximate cause of the fire was the "independent intervening act of the boys in throwing lighted matches into the gasoline" (142 Tenn. 292, 293, 218 S. W. 817, 820).

Wallace v. Electric Power Board, 36 Tenn. App. 527, 259 S. W. (2d) 558, relied on by defendant, is likewise not in point. The accident happened at the intersection of a street. On the southeast corner was a telephone pole, with a guy wire running north over the street to a stub pole on the northeast corner of the intersection. Two automobiles collided, knocked down the stub pole,

and caused the guy wire to sag within three feet of the pavement, and a third automobile ran into the intersection, struck the guy wire, and caused the telephone pole to fall and strike plaintiff.

The pole was decayed, and should have had a guy wire extending to the east, in addition to the one running north to the stub pole. But this had nothing to do with causing the accident. Defendants were not negligent in respect of the stub pole or the guy wire which fell. The accident was caused by (1) the act of the two motorists in colliding, knocking down the stub pole, and causing the guy wire to sag, and (2) the act of the third motorist in running into the guy wire and knocking the pole down on plaintiff. Thus the accident was due to no fault of defendants but was caused solely by the independent intervening acts of the three motorists.

In Teague v. Pritchard, 38 Tenn. App. 686, 279 S. W. (2d) 706, cited by counsel, defendant's car was left parked on a stret, unattended, its doors unlocked, and the ignition key in the car. A thief took the car and negligently injured plaintiffs. We held that the risk of injury to them by the thief's negligent operation of the stolen car was not foreseeable and not within the reasonable range of defendant's negligence; and that the proximate cause of plaintiff's injuries was the intervening act and negligence of the thief. Cf. Morris v. Bolling, 31 Tenn. App. 577, 583, 218 S. W. (2d) 754; Prosser on Torts (2nd Ed.) 156, 276, and cases there cited.

■ Defendant's second assignment of error is: "The Court erred in refusing to direct a verdict on the conclusion of plaintiff's evidence upon the motion by defendant on the grounds that" (setting out the grounds).

Defendant did not stand upon this motion, made at the close of the evidence for plaintiff, but proceeded to introduce proof in its own behalf, and thereby waived its motion. McParland v. Pruitt, 39 Tenn. App. 399, 284, S. W. (2d) 299, 301, and the cases there cited.

■ Defendant's third assignment of error complains that the Trial Court erred in failing to set aside the verdict and in not entering judgment for defendant, "because the evidence preponderated against the verdict". We have no power to review the weight of the evidence, and cannot consider an assignment that the evidence preponderates against the verdict. City of Columbia v. Lentz, 39 Tenn. App. 350, 282 S. W. (2d) 787, 789, and cases there cited.

Defendant's fourth assignment is: "The Court erred in failing to allow the defendant two full days in which to file its plea to Count Four of plaintiff's declaration, because the amendment was allowed one day before the trial of this cause was begun, and that the defendant had insufficient time in which to prepare its defense to this count, and therefore, was prejudiced thereby".

It appears from the record that plaintiff's declaration in three counts was filed December 28, 1955, and defendant's demurrer thereto was heard and overruled on January 25, 1956. Defendant pleaded over February 22, 1956. On May 22, 1956, an order was entered allowing plaintiff to amend by adding a fourth count and that count was filed that day, and the trial was begun on the next day.

■ Defendant refers to the statute (T. C. A. sec. 20-710) providing that within "two days" after each step

taken by one party in making up the issues, the other shall plead or demurrer, etc. This statute refers to the steps to be taken in pleading at the appearance term to make up the issues (see also T. C. A. secs. 20-902, 20-901), and not to pleading to amendments which may be allowed at the trial, in the discretion of the Trial Judge (T. C. A. sec. 20-1505). In such case there shall be no continuance unless the court is satisfied that substantial justice requires it (T. C. A. sec. 20-1507).

The fourth count really added nothing to the matter stated in the other counts except the averment that defendant had actual knowledge that the work was being done by the highway employees, and was guilty of negligence in failing either to remove the obstruction or notify them of the danger. It is not pointed out how defendant was prejudiced by not being allowed two full days after count four was filed in which to plead to it.

Assignment number five complains of the action of the court in failing to allow defendant's motion to strike certain testimony of Mr. Green. This assignment fails to "quote the full substance of the evidence admitted", as required by Rule 11 (3), 29 Tenn. App. 830. Moreover, we find no merit in the assignment.

Defendant's sixth and last assignment is that the Court erred in allowing plaintiff to file Exhibit "10" to plaintiff's testimony, because such exhibit had been severed in several places and was not in the original state.

This assignment refers to the anchor rod, which was seen by witnesses just after the accident, and was fully described to the jury, but which was left lying near the scene on the land of Mr. Vickers, who later cut it in two

or three pieces. We think it was within the sound discretion of the Trial Judge to admit this evidence. At any rate it is not pointed out how any prejudicial error resulted to defendant.

All of the assignments of error are overruled. The judgment of the Trial Court is affirmed, and a judgment will be entered here for plaintiff against defendant for the amount of the judgment below with interest and the costs of this appeal in error. The costs are also adjudged against the surety on defendant's appeal bond.

Avery, P. J. (W. S.), not participating.

Carney and Bejach, JJ., concur.