MILLICENT G. DAN, Plaintiff in Error, v. THOMAS
M. BRYAN, and JOHN REEVES, Administrator of
Estate of EDWARD H. REEVES, Deceased, Defendants in Error.—354 S. W. (2d) 483.

Western Section at Jackson. August 31, 1961.

Petition for Rehearing Denied March 7, 1962.

Petition for Certiorari Denied by Supreme Court, December 8, 1961.

Robert R. Krivcher and Eulyse M. Smith, Memphis, for plaintiff in error.

Charles G. Morgan and George E. Morrow, Memphis, for Thomas M. Bryan.

Nelson, Norvell & Floyd, Fred P. Wilson, and Ralph W. Farmer, Memphis, for John Reeves, Administrator.

BEJACH, J.  In this cause, Mrs. Millicent G. Dan as widow of her deceased husband, Melwyn B. Dan, brought suit against Thomas M. Bryan and John Reeves as administrator of the estate of Edward H. Reeves, deceased, claiming damages in the amount of $150,000 for the death of her said husband, Melwyn B. Dan, which she claims was caused as the proximate result of one or more of the joint, combined, several, and concurrent wrongful acts and omissions on the part of the defendant, Thomas M. Bryan, and Edward H. Reeves, deceased.  The suit grew out of the electrocution of both Edward H. Reeves and Melwyn B. Dan in a swimming pool owned by the deceased Edward H. Reeves.  The parties will be referred to as plaintiff and defendant, or called by their respective names, Edward H. Reeves being designated as Sheriff Reeves.  While this cause was pending on appeal, Thomas M. Bryan died, but it has been revived in the name of the Executor of his estate.

On May 7, 1958, Edward H. Reeves, who was at that time Sheriff of Shelby County, was undertaking to pump

out a swimming pool on premises of his home at 4824 Gwynne Road, Memphis, Tennessee. He was using an electric motor and pump loaned to him by defendant Thomas M. Bryan. Sheriff Reeves had a swimming pool located at the rear of his premises, surrounded by a thick hedge. There was a gate to the portion of the premises where the pool was, which was normally locked when the pool was not in use. On the date of his death and that of Melwyn B. Dan, Sheriff Reeves decided to clean the pool which had at that time approximately three to four feet of water in it at the deep end of same. Sheriff Reeves and defendant Thomas M. Bryan had been friends for a number of years. Bryan was in the market and restaurant equipment business at 416 South Main Street in Memphis, and had during the previous winter purchased an electric motor and pump which was at his place of business, and which fact was known to the deceased Reeves. The motor and pump in question had been checked, tested, and found to be in good running condition by Bryan's service man who was in charge of electric refrigerators. The record shows that after getting the pump from Bryan, which was a day or two before the fatal accident, Reeves took it by a master electrician who checked it and found nothing wrong with it.

On the day of the fatal accident, May 7, 1958, Sheriff Reeves placed the pump on the diving board at the north end of his pool and tied it there with lamp wire. The motor was connected by extension cords with an electric outlet in an out house which was located in the vicinity of the pool. The pump was connected with an iron pipe which went down into the pool, and there was a discharge hose leading from the pump to the rear of

the back yard. Sheriff Reeves worked from around 2:00 P. M. until 6:00 P. M. on May 7, 1958 trying to get the pump into operation, but was unsuccessful. While some neighbors were helping him, between 5:00 P. M. and 6:00 P. M., Reeves descended into the pool with the electric motor running, and held onto the iron pipe, —without bad results of any kind. The pump ran for a short time, but stopped around 6:00 P. M. At that time, Mrs. Yackel, a neighbor, noticed smoke coming from the motor. About that time, Sheriff Reeves telephoned defendant Bryan and asked him to come over and help start the pump so that the water could be pumped from the pool. Bryan drove to the Reeves home immediately, where he found the Reeves family at dinner. After dinner, Bryan and Reeves went to the pool where Reeves started the motor by touching some of the wires together; after which, he disconnected the plugs which connected it with the extension cord. There is proof in the record that the insulation on one of the wires attached to the motor was skinned back several inches; but there is no proof in the record that this fact was known to Bryan. Reeves tried to prime the pump while standing near the diving board, but was unable to do so. He then descended into the water and held his hand on the bottom of the iron pipe so as to keep the water from flowing out. Thereupon, water was poured in from the top by Bryan. Reeves then told Bryan to start the pump; which he did by crouching down and plugging in the extension cord. In his crouched position, Bryan could not see Reeves in the pool; but after the pump had run for about a minute and then stopped, Bryan looked around to tell Reeves that the motor had stopped; whereupon he saw the

Sheriff lying in the water face down. He thought that Reeves had had a heart attack, and went down the ladder to render assistance. Being unable to pull Reeves from the water, Reeves being a man who weighed 246 pounds and Bryan weighing only 174 pounds, Bryan came back up the ladder and called for help. Mrs. Reeves responded first, but she, like Bryan, thought her husband had had a heart attack. Both Bryan and Mrs. Reeves called for help; whereupon the deceased, Melwyn Dan, who lived diagonally across the street some 500 feet away, heard the cries for help and ran to the pool to render assistance. Mrs. Reeves told him the Sheriff had had a heart attack. Dan jumped into the pool, along with Reeves, where he also was electrocuted. About this time, Mr. Kuiken, another neighbor who had heard the calls for help, came to the scene of the accident, heard the motor runing, but did not connect that circumstance with the accident.

After Bryan had called the police and fire departments, he returned to the pool where someone told him to stop the motor, which he did by jerking out the plug on the extension cord.

Plaintiff's declaration is in three counts. Count I alleges common law negligence on the part of both defendants. Count II undertakes to assert the doctrine of res ipsa loquitur, and Count III charges violation of City ordinances pleaded,—which ordinances regulate the installation of electric equipment.

After separate demurrers filed by defendants to the declaration had been overruled, both defendants filed pleas of "not guilty" and "contributory negligence". Pursuant to motion of the plaintiff, they later filed special

pleas setting out in detail their defenses; to which pleas replications were filed. An enormous amount of testimony was introduced, the record of this cause consisting of nearly one thousand pages. At the conclusion of the proof, motions for directed verdicts were made by both defendants. That of Sheriff Reeves was sustained by the Court, but that of Thomas M. Bryan was overruled. The jury returned a verdict for the defendant Bryan. Plaintiff made a motion for a new trial as to both defendants. Defendant Bryan also moved for a new trial, taking the position that his motion for directed verdict should have been granted. After both motions for new trial had been overruled, appeals in the nature of writs of error were perfected by both plaintiff, Mrs. Millicent Dan, and the defendant Thomas M. Bryan,—which appeals are now before us for disposition.

As appellant, Mrs. Dan has filed five assignments of error. Assignment 1 complains because the lower court struck from her declaration allegations of violation by defendants Reeves and Bryan of City ordinances of the City of Memphis which regulate electrical installations. Assignment 2 presents the principal question, determinative of this lawsuit, which is whether or not the trial judge erred in granting Sheriff Reeves' motion for a directed verdict in his favor. Assignment 3 complains because of failure of the trial judge to grant a new trial as to defendant Thomas M. Bryan on account of misconduct of one of the jurors, Sam Borgnoni. Assignment 4 complains of the failure of the trial judge to grant plaintiff's motion for new trial because of misconduct of the defendant Thomas M. Bryan, himself. Assignment 5 complains of the ruling of the trial judge

in striking Count II of plaintiff's declaration concerning application of the doctrine of res ipsa loquitur. Defendant Thomas M. Bryan's assignment of error presents the question of whether or not his motion for a directed verdict should have been granted.

We think that Mrs. Dan's assignment number 2 and Bryan's single assignment present the question to be decided by this Court which is determinative of the lawsuit as to both defendants. By her assignment number 2, Mrs. Dan complains because the trial judge granted the peremptory instruction in favor of the defendant Reeves; and defendant Bryan, as appellant, by his assignment of error, complains because the Court did not grant his motion for a directed verdict. We think the Court should have granted a directed verdict as to both defendants. Since the Court did grant such motion in favor of defendant Reeves, the correct result was reached, and will be affirmed. Inasmuch as the jury verdict was in favor of defendant Bryan, it would be immaterial whether Bryan should have prevailed by virtue of a directed verdict or by virtue of the verdict actually returned, except for the fact that the plaintiff claimed, and is claiming in this Court, a new trial on the ground of misconduct of a juror, and misconduct of the defendant Bryan, himself, while the jury was out.

The reason we think motions for directed verdict should have been granted in favor of both defendants Reeves and Bryan is that, in spite of the enormous volume of testimony, not one line of it establishes any duty on the part of either defendant Reeves or defendant Bryan towards the deceased, Melwyn B. Dan, violation of which entitles Mrs. Dan to a right of action. Aside

from the question of whether or not either Sheriff Reeves or defendant Bryan was guilty of negligence under the facts and circumstances of this case,—which we will discuss separately, liability could not be established in the absence of violation of a duty owed to the deceased Dan. This is true, even if we assume that both defendants were guilty of negligence. In Evens v. Young, 196 Tenn. 118, 264 S. W. (2d) 577, the Supreme Court of Tennessee, speaking through Mr. Justice Gailor, said:

"Question of liability for negligence cannot arise at all until it is established that the man who had been negligent, owed some duty to the person who seeks to make him liable for his negligence. Prosser on Torts, p. 179; Winfield, The Law of Torts, 5th ed. pp. 409, 410."

In the instant case the deceased, Dan, who lived some 500 feet away from the swimming pool where the accident occurred, came in response to a cry for help and lost his life in an effort to render help. The swimming pool where the accident occurred was on private property of Reeves which was enclosed and normally locked, when not in use. No duty existed on the part of Reeves, with reference to Dan. Dan cannot be considered an invitee of Reeves because Reeves was already dead at the time that the call for help was made. As to Bryan, who was a guest on the premises, assuming as he did, and naturally so, that Reeves had had a heart attack, and being unable because of Reeves' weight being so much more than his own, to get him from the pool unassisted, he cried for help as any normal person would have done under the circumstances. If Reeves were guilty of negligence in using an electric motor without

a "ground", with an excessive amount of insulation removed from one of the wires, or in connection with an iron pipe extending down into the pool, such negligence was towards himself, only, and he paid for that negligence with his life. As to Bryan, there is no showing that he either knew or ought to have known of the uninsulated wire, or that Reeves' death was caused by electrocution instead of by a heart attack.

■ But, it is argued by counsel for Mrs. Dan that Mr. Dan was acting as an attempted rescuer in an emergency not created by himself, which entitled him to special consideration. In support of this contention her counsel cite the cases of Mobile & Ohio Railroad v. Ridley, 114 Tenn. 727, 86 S. W. 606, and Williams v. Town of Morristown, 32 Tenn. App. 274, 222 S. W. (2d) 607. These cases hold that in such situations of emergency, one attempting to rescue another who is in imminent danger cannot himself be held guilty of contributory negligence. Although contributory negligence is pleaded in the instant case, we think the deceased Dan was not guilty of same. The absence of contributory negligence on his part does not, however, establish liability against either of the defendants.

■ Also, it is argued on behalf of plaintiff, Mrs. Dan, that both defendants ought to have foreseen some such occurrence as caused the death of Mr. Dan, and consequently that they should be liable therefor. For this contention they cite the Tennessee cases of Jackson v. B. Loewenstein & Bros., 175 Tenn. 535, 136 S. W. (2d) 495; Spivey v. St. Thomas Hospital, 31 Tenn. App. 12, 211 S. W. (2d) 450; Friendship Telephone Co. v. Russom, 43, Tenn. App. 414, 309 S. W. (2d) 416; and Inter-

City Trucking Co. v. Daniels, 181 Tenn. 126, 178 S. W. (2d) 756. These cases hold, merely, that where a duty is owed towards plaintiff or towards the public of which the plaintiff is a part, which duty has been violated, and where the resulting damage or some other of like nature should have been foreseen, the defendant is liable. None of these cases hold, however, that a defendant is liable where he owed no duty towards plaintiff, nor, as in the instant case, towards plaintiff's intestate. On the other hand, counsel for Sheriff Reeves' estate cite and rely on the cases of Moyers v. Ogle, 24 Tenn. App. 682, 148 S. W. (2d) 637; and Wallace v. Electric Power Board, 36 Tenn. App. 527, 259 S. W. (2d) 558. These cases hold that one who does nothing more that furnish conditions or give rise to the occasion by which an injury was made possible is not liable for the injury, if there intervenes between such prior acts and the injury a distinct and unrelated but efficient cause; and that the person who created such condition cannot be held liable for damages not reasonably foreseeable. We think the cases of Moyers v. Ogle and Wallace v. Electric Power Board are more applicable to the facts of the instant case than are those cases relied upon by counsel for Mrs. Dan.

■ In view of our holding that no duty or obligation was owed by either Sheriff Reeves or defendant Thomas M. Bryan towards the deceased, Melwyn B. Dan, which could be the basis of liability towards the deceased Dan, or which could establish liability on their part, it follows that a directed verdict in favor of Sheriff Reeves was properly granted, and that such directed verdict should also have been granted in favor of defendant Bryan. Discussion of the assignments of error charging mis-

conduct on the part of juror Borgnoni and misconduct on the part of defendant Bryan, himself, while the jury was out, is, therefore, unnecessary and superfluous. The alleged misconduct of juror Borgnoni consisted of going to or near the scene of the accident and stepping off the distance from Dan's home to the pool. The alleged misconduct of defendant Bryan consisted in his having remarked to a juror while at lunch, viz., juror Gerald J. Beck, that if it had not been for the lawyers for the defendant Reeves, he, Thomas M. Bryan, would not be in the case. The distance from Dan's home to the pool was not in dispute, and each juror swore positively that his verdict was rendered solely on the evidence adduced and the trial judge's charge. The trial judge, in the exercise of his discretion, approved the verdict of the jury, and, in any event, we think the provisions of the "harmless error" statute, Section 27-117, T.C.A., would prohibit a reversal on account of either of these alleged errors.

■■ With reference to assignments of error which complain of the action of the trial judge in striking from plaintiff's declaration allegations as to city ordinances regulating the installation of electrical equipment, and as to plaintiff's theory of the application to this case of the doctrine of res ipsa loquitur, we think it is clear that neither of these had any application to the facts of the instant case. Consequently, no reversal can or should be had in this Court because of such action by the trial judge.

It results that all assignments of error filed in this Court by plaintiff Millicent G. Dan will be overruled, and the assignment of error filed on behalf of Thomas

M. Bryan as appellant will be sustained. The judgment of the lower court will be affirmed, with the costs adjudged against the plaintiff, Millicent G. Dan and her sureties on the appeal bond filed in this Court, and on the cost bond filed in the lower court.

Avery, P. J., (W. S.), and Carney, J., concur.