# FRANCES McPARLAND et al. v. OSCAR PRUITT.— 284 S. W. (2d) 299.

Middle Section.  July 1, 1955.

Petition for Certiorari denied by Supreme Court, December 9, 1955.

400

Goodpasture, Carpenter & Dale, of Nashville, and Earl Beasley, of Franklin, for Frances McParland and others.

Courtney, Covington & Courtney, of Franklin, for Oscar Pruitt.

FELTS, J.   This action was brought by Oscar Pruitt to recover for injuries sustained in being run down by an automobile. The car was being driven by defendent Valeria McParland and owned by her sister, defendant Frances McParland, who was on the front seat with her. He sued the owner as master and the driver as servant, and alleged that they had struck him down in the highway by gross and wanton negligence in a hit-run accident.

There was a verdict and judgment in favor of plaintiff against defendants for $25,000. They appealed in error and have assigned errors. They assert that the Trial Judge erred in overruling their motion for a directed verdict at the close of the evidence for plaintiff, and again at the close of all the evidence, because there was no evidence of any negligence on their part, and because the undisputed evidence showed that the plaintiff was guilty of contributory negligence, as a matter of law, which barred this action.

Further, for Frances McParland, it is urged that there was no evidence that her sister was driving the car as her servant at the time of the accident, but that the uncontradicted evidence was that she had loaned the car to her sister and it was being used by the sister exclusively for the sister's own purpose, and she was merely accompanying her sister on the trip.

Defendants cannot assign error on the overruling of their motion at the close of the evidence for plaintiff.

They did not elect to stand on that motion, but proceeded to put on proof of their own, and thereby waived the motion. Tennessee Cent. Railway Co. v. Zearing, 2 Tenn. App. 451, 454; Town of Dickson v. Stephens, 20 Tenn. App. 195, 199, 96 S. W. (2d) 201; Tallent v. Fox, 24 Tenn. App. 96, 105, 141 S. W. (2d) 485.

So the issue is whether a verdict should have been directed for defendants on the evidence as it stood at the close of the case. In arguing this question learned counsel differ widely in their views of the evidence, each presenting his own theory of the case, largely involving questions of the weight of the evidence and the credibility of the witnesses.

We must, however, take the view of the evidence most favorable to plaintiff. In testing defendants' motion for a directed verdict, we must look to all the evidence, take the evidence for plaintiff as true, discard all countervailing evidence, indulge all reasonable inferences to uphold the verdict. Smith v. Sloan, 189 Tenn. 368, 376-377, 225 S. W. (2d) 539, 542, 227 S. W. (2d) 2.

Evidence for plaintiff was that the accident happened on State Highway No. 11 at the north edge of Nolensville about 1:30 a. m., March 13, 1953. Defendants in the car were coming south, approaching Nolensville from the north. Plaintiff and E. C. Gamble were in an automobile with Robert Kelley. There was some trouble with the motor, the car stopped, and they were trying to push it. It was headed north on its right (the east) side of the highway. Kelley was in the front seat under the steering wheel, and plaintiff and Gamble were behind the car trying to push it.

Seeing the light of the car approaching from the north, they decided to flag it and ask it to push their car. As it approached, plaintiff walked from behind the car

and stood in the road a few feet south of it and about two feet east of the white painted center line, and was standing there waving his arm trying to flag the car to stop and aid them.

The car, however, did not stop or check its speed but "whipped over close and hit him and it just kept on agoing". It was going 55 or 60 miles an hour, and its left front struck plaintiff, knocked him more than 100 feet, leaving him lying unconcious near the east edge of the pavement; and defendants drove on, leaving the scene without stopping to give their names or to get medical or surgical aid for the injured man.

There was ample evidence of negligence on the part of defendant driver. Nolensville is a thickly settled town and at its north edge there was a highway marker "Nolensville". Also there was a caution light suspended over the highway near where the accident occurred—near enough to light the place. Several hundred feet to the north there was a highway sign "Speed Limit 30". Still further north several hundred feet was another highway warning sign "Speed Zone Ahead". Also the headlights of Kelley's car were burning.

So as the driver approached the scene of the accident she was warned of the speed zone ahead, of the speed limit of 30 miles an hour, of the caution signal light, which was visible three-quarters of a mile; and she could see Kelley's car. She admits herself she saw all these warnings, ignored them all, and was driving 40 miles per hour, as she says, and 55 or 60 miles per hour, according to evidence for plaintiff, through this 30-mile speed zone and this town.

Her version of the accident was that she and her sister stopped at Woodbine, got some sandwiches, and drove on south toward Nolensville. By the time she approached

these signs her sister, on the front seat beside her, was asleep. She saw them but drove on at 40 miles per hour. She saw the lights of Kelley's car, and about the time she was within 20 feet of it, its left front door opened across the center line and a man backed out the door in front of her, and she struck the man and the door. She threw her "brake plumb to the floor", swerved, but could not miss the man or the car door.

She further said that she put on her brakes and came to "a dead stop" within 30 or 35 feet from the point of impact. But thinking the man might have been "pushed out of the car" in front of her, or there might be some sort of "foul play", she drove on, without looking for the man she knew she had struck or stopping to render any aid to him.

By this time her sister had waked up. The driver said "I am afraid I hit that man" and she was afraid to stop. The sister then told the driver, "you will have to use your own judgment". So, the driver stepped on the accelerator and they fled from the scene. But they knew Nolensville was a thickly settled neighborhood, and they drove on through a number of towns where they could have stopped and called an ambulance and doctor, and reported the accident to the officers, including Shelbyville, Tullahoma, and Winchester, the latter being near their home.

██ So we think there was ample evidence to take the question of the negligence of the driver to the jury, and that the evidence likewise made the question whether plaintiff was guilty of contributory negligence a question for the jury. According to the evidence for plaintiff, which was accredited by the jury, plaintiff was standing a foot or two on his side of the center line, and several feet south or beyond the Kelley car, and while he was standing there waving his arm trying to flag the car, it

struck him down and proceeded on without stopping. So the question of his contributory negligence was for the jury. Carey Roofing & Mfg. Co. v. Black, 129 Tenn. 30, 164 S. W. 1183, 51 L. R. A., N. S., 340; Osborn v. City of Nashville, 182 Tenn. 197, 203, 185 S. W. (2d) 510.

■ Comment is made that plaintiff and Kelley had drunk five or six bottles of beer between about 5 p. m., when they got off from work, and about 1:30 the next morning, when the accident happened; and that Gamble, who got in the car with them about midnight, had drunk several bottles of beer. They all quite frankly admitted this drinking. But they seemed able to give the details of the accident, and said they were not drunk. Whether they were or not, was a question of their credibility for the jury, and the jury accredited them. We must take their testimony as true, in considering defendant's motion for a directed verdict. Smith v. Sloan, supra.

■■ We think the Court did not err in refusing to direct a verdict for defendant Frances McParland on the issue of the master-servant relation between her and her sister, the driver. She owned the car and it was registered in her name. Proof of her ownership of it and its registration in her name created a presumption, and made a *prima facie* case, that the car was being operated by her or by her agent for her use. Code, Secs. 2701, 2702.

It is true that she said that she loaned the car to her sister to come to Nashville to talk to the sister's employer at the hospital about a confidential matter; that they started in the car from their home near Winchester about 9 o'clock at night, drove to Nashville, and were on their way back home when the accident happened.

■ But she and her sister were both contradicted in material matters by the evidence for plaintiff. The sister was contradicted in practically all of the details of the

accident, and both of them were contradicted in their statement that the brakes were put on and the car stopped at the scene. The evidence for plaintiff, testimonial and circumstantial, was that the car did not stop but went on without checking its speed. Since they were contradicted in this very material matter, it was within the province of the jury to reject all of their testimony, upon the maxim *falsus in uno falsus in omnibus*. Welch v. Young, 11 Tenn. App. 431, 441.

So this presumption and *prima facie* case against the owner could not be dispelled, so as to require a directed verdict for her, by the testimony of herself and her sister, which the jury were at liberty to reject and did reject, because both of them were contradicted, and the owner was, moreover, an interested witness. Welch v. Young, supra; McConnel v. Jones, 33 Tenn. App. 14, 25, 228 S. W. (2d) 117, and cases there cited; Poole v. First National Bank of Smyrna, 29 Tenn. App. 327, 339, 196 S. W. (2d) 563.

■ Defendants complain of a portion of the Trial Judge's charge in which, after submitting the issue of contributory negligence, he told the jury that if they found the driver was guilty of gross and wanton negligence, contributory negligence of plaintiff, if any, would not bar his action.

We think there was no error in this instruction. The Court fairly submitted the issue of contributory negligence to the jury, and gave defendant the full benefit of that defense. Moreover, we think this instruction on gross and wanton negligence was not without basis in the evidence.

■ It is true that an inadvertent violation of a traffic regulation does not constitute gross and wanton negligence. But in this case defendant driver saw these

warning signs, willfully disregarded them, and drove through this 30-mile per hour speed zone and through this town at a speed of 40 miles per hour, as she said, and of 55 or 60 miles per hour, according to evidence for plaintiff.

⬛ After striking this man, she fled from the scene, without stopping to give her name or offer any aid. We think the jury could have found that this conduct manifested a reckless and wanton disregard of the rights of others, and that the driver was guilty of gross and wanton negligence and that her sister was an accomplice in the same. Consolidated Coach Co., Inc., v. McCord, 171 Tenn. 253, 258, 102 S. W. (2d) 53, 55; Hamilton v. Moyers, 24 Tenn. App. 86, 90, 140 S. W. (2d) 799; Byrd v. Gipson, 34 Tenn. App. 254, 260, 236 S. W. (2d) 988.

⬛ Defendants complain that the Trial Judge gave the jury an instruction on the question of punitive damages. We think there was no error in this. In rendering their verdict, the jury stated that they had allowed only compensatory damages and not any punitive damages.

⬛ Error is assigned upon the admission of evidence as to the property of one of the defendants. There was only a general objection to the questions, which was overruled and no exception taken. Where the objection to evidence is general, and no reason is given for the objection, it is not good, and the lower Court's action in overruling it will not be disturbed on appeal. Metropolitan Life Ins. Co. v. Brown, 25 Tenn. App. 514, 518, 160 S. W. (2d) 434, and cases there cited.

⬛ Error is assigned upon the action of the Trial Judge in refusing defendants' request No. 2, by which the Judge was asked to tell the jury that if plaintiff was intoxicated and his injury resulted therefrom, he could not recover. We think there was no error in this. The only

relevance of the issue of plaintiff's intoxication was upon the question of contributory negligence, and this issue was fully and fairly submitted to the jury, which was all defendants were entitled to, to have a fair trial.

Finally, defendants assigned error on the amount of the verdict. This matter seems not to be very seriously pressed here, and defendants made no effort to controvert the proof offered by plaintiff as to his injuries, but frankly stated that as to his injuries they had no countervailing proof.

As stated, plaintiff was struck by the car with such force that he was knocked more than 100 feet, and was left lying in the road unconscious. He was taken by ambulance to St. Thomas Hospital. He suffered concussion of the brain so severe that the surgeons had to drill several holes through his skull to remove clots from each side of the brain, and one may still insert his fingers in the holes. His pelvis was shattered, his left knee fractured, the large bone in his left leg was so shattered that it stuck out through the flesh, and it was necessary to put in an eleven-inch metal nail into the marrow of the leg to hold the bone fragments together. His right knee was so badly wrenched as to cause 100% permanent disability.

He was in the hospital during most of the time from March until August and was in a wheel chair practically the rest of the year. He was an uneducated man who could do nothing but manual labor to earn a living. Because of the permanent disability in his right knee, he is disabled for any type of manual labor. At the time of the trial his doctors' bills and hospital bills amounted to $3,232, and he had lost in wages over $2,400, making his pecuniary loss over $5,600. He underwent severe, intense physical and mental pain and suffering.

We think the verdict of $25,000 is not excessive but is only moderate compensation for the injuries plaintiff sustained. Much larger verdicts for comparable injuries are sustained by the Courts. See, Thoni v. Hayborn, 37 Tenn. App. 56, 260 S. W. (2d) 376; City of Nashville v. Brown, 25 Tenn. App. 340, 157 S. W. (2d) 612.

All the assignments of error are overruled, the judgment of the Circuit Court is affirmed, and a judgment will be entered here for plaintiff against defendants for the amount of the judgment below with interest. The costs of the appeal are adjudged against defendants and sureties on their appeal bond.

Hickerson and Shriver, JJ., concur.