J. B. Daniels et al.

*v.*

Guy F. Talent et al. and City of Lenoir City.

370 S. W. 2d 515.

(*Knoxville,* September Term, 1963.)

Opinion filed September 11, 1963.

Arthur M. Fowler, Dannel, Fowler & Gibson, Loudon, for plaintiffs in error.

THOMAS F. INGRAM, M. G. GOODWIN, Lenoir City, for defendants in error.

MR. SPECIAL JUSTICE ROBERT S. CLEMENT delivered the opinion of the Court.

This appeal comes to this Court from the Circuit Court of Loudon County where the Circuit Judge sustained a demurrer of the Defendants and dismissed Plaintiffs' suit.

This case grew out of the construction of a highway through Lenoir City. Plaintiffs owned a certain house and lot which fronted one hundred (100) feet on South Broadway and had later acquired a fifty (50) foot lot adjacent to said property.

Prior to the construction of State Highway No. 11, Broadway was the main road to Knoxville. Upon the construction of State Highway No. 11, the same intersected with East Broadway. Later, an access road was constructed from State Highway No. 11 to Fort Loudon

Dam, the right-of-way for said road to the Dam being the West property line of Plaintiff's property, but said East Broadway continued from in front of Plaintiff's property across said access road in a Westwardly direction to its merger with State Highway No. 11.

Plaintiffs alleged in their declaration that the Defendants as officials of Lenoir City caused or permitted to be closed a certain part of East Broadway at the West property line belonging to Plaintiffs, and that, by reason of these actions on the part of the Defendants, that part of East Broadway from the West property line of Plaintiffs was torn up and the street blocked as a dead-end street and weeds were permitted to grow in what was formerly East Broadway between the West property line of Plaintiffs and the curb-line of Highway No. 95. That on the property belonging to Plaintiffs, there is a brick home in which the parties live and a rental house and that said property is potential commercial property. Plaintiff further alleged that the closing or abandonment of East Broadway by the officials of Lenoir City has damaged their property and that the same constitutes a taking of the property as provided by the constitution and the statutes of Tennessee, and sues for damages in the amount of Ten Thousand ($10,000.00) Dollars.

The original declaration in this cause was filed on June 19, 1961. The record discloses that court convened on June 26, 1961, at which time the Defendants were granted thirty (30) days in which to plead. That on July 25, 1961, the Defendants demurred to the declaration setting out the following grounds:

"Comes the defendants and for demurrer or motion to strike the declaration, states the following reasons:

"(1) The declaration states nothing more than conclusions of the pleader, and states no specific facts, acts or deeds committed by these defendants, upon which any liability could be charged to these defendants.

"(2) The declaration alleges that the defendant, City of Lenoir City, Tennessee, is duly chartered by Chapter 127 of the Private Acts of Tennessee for the year 1933. This Charter of Incorporation grants to the City of Lenoir City the right to, by Ordinance, 'to open, alter, abolish, widen, etc.' the public thoroughfares in Lenoir City.

"The declaration no where alleges any such action was taken and as a matter of fact no such Ordinance was ever enacted by the governing body of the City of Lenoir City.

"(3) The declaration alleges that 'upon commencing of the bridge over Fort Loudon Dam, *The State of Tennessee relocated* State Highway No. 95, etc'. The Plaintiffs definitely state that the State of Tennessee was responsible for this change and TCA 54-531 places the burden on the State of Tennessee and provides as follows: 'The Department of Highways and Public Works shall construct, reconstruct, improve and maintain streets in municipalities over which traffic from state highways is routed, etc.'

"Wherefore, these defendants pray that they have an order on their demurrer or motion to strike.

"/s/ M. G. Goodwin

"/s/ Thomas F. Ingram

"Attorneys for defendants."

On August 4, 1961, the Plaintiffs filed a Motion to Strike and replied to the plea of the Defendants, this motion and plea is set out herein:

"In this cause comes the plaintiff and moves the Court to strike sections (2) and (2) of the 'DEMUR-RER TO, OR MOTION TO STRIKE PLAINTIFFS DECLARATION' for the reason that said section set up facts not included in the original Declaration, which said facts must be plead by plea-in-abatement, which this plea does not purport to be.

"Comes the plaintiffs and join issues on section (1) of said plea of the defendants.

> "/s/ Arthur M. Fowler
> "Attorney for Plaintiff."

The next action taken in this case was on January 17, 1962, when the Trial Judge filed his memorandum opinion, which was made a part of the record, and due to the importance of this case and the thoroughness of the opinion, it will be copied herein:

## 'MEMORANDUM OPINION

"This case has been given long and studied consideration. In material substance the plaintiffs' declaration, as clarified by the oral arguments of counsel and the stipulated maps or drawing presented, complains that as a result of the construction of the relocated portion of State Highway No. 95 by the State of Tennessee, so as to effect an improved entrance to and from Highway No. 11, East Broadway Street was closed near the plaintiff's property and that thereby plaintiffs' access and right of ingress and egress to their

property from that direction was destroyed, said property fronting on East Broadway and being within the corporate limits of the City of Lenoir City.

"The plaintiffs bring this action as a reverse condemnation proceeding, under T.C.A. 23-1423, against this municipality and as the sole basis therefor say in general terms that the City 'fully cooperated with and assisted the State of Tennessee, by its agreement and concurrence, in furnishing necessary rights of way and easements for the new road to the bridge' and 'caused or permitted to be closed and concurred therein and actively participated in closing East Broadway at the West property line of these plaintiffs.'

"The defendant's demurrer, reasonably interpreted and construed, says in material substance that the declaration does not allege anything that is sufficient in law to place liability upon the defendant for the damage complained of; that the declaration states no specific facts, acts or deeds committed by the defendant upon which to charge it with liability.

"The plaintiffs invoke the law of eminent domain. Loss of access due to closing of a road or street, or the impairment of the right of access and ingress and egress, is a 'taking' of a property right within the sense of the Constitution, for which redress may be sought by a reverse condemnation proceeding. *Stewart v. Sullivan County,* 196 Tenn. 49 [264 S.W.2d 217]; *Brooksbank v. Leech,* 206 Tenn. 176 [332 S.W.2d 210]; *Shelby County v. Dodson,* 13 Tenn.App. 392; [*Ill.Cent.*] *Railroad v. Moriarity,* 135 Tenn. 446 [186 S.W. 1053]. Such is the 'taking' for which the plaintiffs are seeking damages, and such is the method which they have

adopted to obtain redress. The 'taking' was incident to and the result of the construction of a state highway by the State of Tennessee.

"The question thus presented is whether, under the averments of the declaration, the defendant City is legally liable for the plaintiffs' damages resulting from such a 'taking.'

"There is no allegation that the City entered into or made any contract with the State Department of Highways by virtue of the authority to that end conferred by T.C.A. 54-531, which statute the plaintiffs rely upon in their brief. There is no averment that the defendant City did or agreed to do anything in its corporate capacity having to do in any way whatsoever with the construction of the highway. Rather, as above stated, the plaintiffs rest their case upon the general allegations quoted above, which fail to charge any specific act or deed committed by the defendant in its official or corporate character, and which, therefore, are statements of conclusions only.

"But beyond that, the plaintiffs are confronted with the rule of law that a municipal corporation is not liable in an action to recover for property taken for state highway purposes within the corporate limits, in the absence of any binding contract or commitment made in its corporate capacity. In *Dickson County and Town of Dickson v. Wall,* 12 Tenn.App. 600, the Court said:

" 'The plaintiff below, D. E. Wall, recovered a judgment jointly against the county of Dickson and the town of Dickson for $1425 as compensation for the taking of part of his land and incidental dam-

ages to the remainder. The suit grew out of the construction of Highway No. 48 by the State Department of Highways and Public Works, with Federal aid, from north to south through the county of Dickson and town of Dickson.

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

" 'At the October term, 1927, of the Dickson County Quarterly Court a proposal was made, and it was by resolution accepted by said Court, that the County furnish to the State of Tennessee the right of way for this highway. \* \* \*

" 'No proposal was ever made to the town of Dickson to furnish any right of way for this highway, nor did it in its corporate capacity agree to do so; nor did it attempt to have anything to do with the location of the highway through the town or the construction of it, except that some dirt was furnished by it for a fill several blocks away from the plaintiff's land.

" 'In October, 1928, a suit was brought in the Circuit Court against the plaintiff Wall by the Commissioner of Highways and Public Works, under the provisions of Chapter 74 of the Acts of 1917 (T.C.A. 54-506) and Chapter 149 of the Acts of 1919 (T.C.A. 54-510), to condemn, for the purposes of this highway, a right of way over that part of plaintiff's land lying without the town of Dickson. The town of Dickson was not a party to this proceeding. A jury of view undertook to assess the damages, but its report was not filed with the Clerk and of course no judgment was entered thereon. No steps were properly taken to compensate the plaintiff for the taking of

his property. He brought this suit in March, 1929, to obtain an adjudication and settlement of what was due him.

" 'The aforesaid acts of 1917 and 1919 provide that suit for condemnation of lands for purposes of construction of highways by the State and County aid, may be brought by the county or by the Commissioner of Highways and Public Works. In *State Highway Department v. Mitchell's Heirs,* 142 Tenn. 58, 216 S.W. 336, the court said:

" ' "As before indicated, proceedings herein will be according to the general condemnation laws, except as they are modified by the acts of 1917 (T.C.A. 54-506) and 1919 (T.C.A. 54-510). Compensation will be assessed and a judgment against the county then obtained, for such a judgment is plainly authorized by section 5 of Chapter 74 of the Acts of 1917 (T.C.A. 54-506).

" ' "The same section enacts this: All judgments rendered and other expenses necessarily incurred in such condemnation proceedings shall be paid out of the general funds of the county, in which the expenses are incurred and standing to the credit of the trustee, on the warrant and voucher of the county judge or chairman, drawn under the direction of the secretary of the department.''

" 'In *Carroll County v. Matlock,* 7 Tenn.App. [564] 567, referring to the aforesaid case, it was said:

" ' "That was a condemnation suit brought by the Highway Commission and Washington County, and the Court in reversing and remanding the case said

it would be proceeded with under the general law except as modified by Acts of 1917 and 1919, and a judgment would go against the county for compensation due the owner of the land. If, then, in the present case the State Highway Commission had instituted condemnation proceedings the judgment would have gone against the county of Carroll for the compensation due the owner, Matlock. Applying then the general rule that the party liable in case of condemnation is liable in case of possession taken without condemnation it is immaterial whether possession was taken by the County or by the Highway Commission, in either event the compensation should be assessed against the county.

" ' "The two statutes taken together, with the general provisions for condemnation in the Code constitute a scheme by which the obligation is imposed upon the county, in the first instance, to secure the right of way for highway purposes. If the county will not act promptly then the State authorities may act, so the work will not be delayed, but in any event the amount due the landowner is assessed against the county, and this result follows if possession is taken without proceedings to condemn."

" 'It is therefore well settled both by statutory provision and by judicial decision, that the county through which such proposed highway is to run is liable for the value of the land so taken and for incidental damages, whether upon judgment after condemnation or upon possession taken without condemnation. These statutes in force when the plaintiff's property was taken provided for such payment by the county. They contain no provision for any

payment by an incorporated town or city through which the highway is to run. The land lying within the corporate limits of the town or city is a part of the county in which it is located. Chapter 42 of the Public Acts of 1929 (T.C.A. 54-531) providing that the Department of Highways and Public Works shall construct, maintain, or contribute to the construction, or maintenance of all streets or roads within municipalities over which the traffic from the state highways is routed through the municipalities, is not retroactive and does not apply to this case.

" 'The town of Dickson, furthermore, was neither asked, nor did it agree, to furnish any of the right of way for this highway. The resolution of the Quarterly County Court, reasonably interpreted, did not restrict the liability of the county to the land lying without the corporate limits of Dickson.

" 'We conclude, therefore that the county of Dickson alone is liable for the compensation due the plaintiff as determined by the judgment; That the town of Dickson is not liable for any of it; and that the motion made in behalf of the town of Dickson for a directed verdict in its favor should have been sustained.' "

"In *Brooksbank v. Leech,* 206 Tenn. 176, [332 S.W. 2d 210,] suits were brought against the State Commissioner of Highways for the taking of and damage to property of plaintiff landowners incident to the construction of a controlled access highway. Affirming the trial court in sustaining the defendant's demurrer and dismissing the suits, the Court said:

" 'Thus it is upon an examination of the statutes in reference to the construction of State highways we find that in Section 54-506, T.C.A., the Legislature has provided that all judgments and other expenses in condemnation procedures shall be paid out of the general funds of the County "in which the expenses are incurred."

" 'This Code section originated in the Public Acts of 1917 and has been before the Court many times. In the first of these cases, *State Highway Department v. Mitchell's Heirs,* 142 Tenn. 58, 216 S.W. 336, this Court speaking through the late Chief Justice Green announced the rule that a landowner's remedy for the taking of his lands for State highway purposes is against the county. Subsequent to this case many others were announced and one by the Court of Appeals, *Whitlow v. Hardin County,* 13 Tenn.App. 347, again held directly that the county is liable to the landowner for the damages to property taken by the State regardless of the fact of whether or not the county was interested in the road being built through that county and when the road was taken for State highway purposes alone.

" '* * * By Section 54-511, T.C.A., which is a codification of Chapter 57 of the Public Acts of 1931, this Court held in *Phillips v. Marion County,* 166 Tenn. 83, 59 S.W.2d 507, that under this statute the county was liable to the landowner and not the State, that is, the State not directly liable to the landowner but the landowner's right of action was against the County in which the land lay and the State was not liable directly to the landowner.

\* \* \* \* \* \* \* \* \* \* \*

" 'Thus it is by statute and judicial interpretation thereof that a fund is provided and a way is also provided for suit to satisfy this claim. In other words the State is not taking the property of these plaintiffs in error without leaving him or providing him with a means of securing adequate compensation for the property taken. He may sue the county in which the land lies and there obtain just compensation for the property as taken.

" 'The insistence is that a different rule should prevail here wherein this land is taken under Code Section 54-2001 et. seq., T.C.A., which is an enactment of the Legislature of 1955 for the purpose of these controlled access facilities and these super highways and that the governmental authorities thus by taking this land and closing streets and roads that the State in enacting this legislation intended to create a different scheme of remedies for landowners. Thus that there is no means to be compensated for the land taken except by suit against the State or the State Highway Commissioner. We think though, as said in the outset hereof, that this new statute (54-2001 et seq.) must be and has to be considered in pari materia with Section 54-201 et. seq., which deals with the acquisition of lands for highway purposes. All of these statutes must be construed together.

" 'Lastly the plaintiffs in error by supplemental brief insist that Chapter 216 of the Public Acts of 1959 in Section 13 thereof (T.C.A. 23-1540) specifically provides that all judgments rendered shall be paid out of the general funds of the municipality,

County or State, whichever may be the condemnor gives them a right and authorizes suit and judgment to be brought and entered directly against the Commissioner. We cannot agree to this reasoning and think that this legislative enactment likewise must be read in pari materia with the other Code Sections affecting eminent domain. Such a section must be strictly construed because they are in derogation of the State's exemption from suits. *State ex rel. Allen v. Cook,* 171 Tenn. 605, 106 S.W.2d 858.'

"In *Brooksbank v. Leech,* supra, the Court reaffirms the long established rule that the county is liable for property taken and damages incident to construction of a state highway. The Court specifically refers to T.C.A. 54-511 (Ch. 57 of the Acts of 1931), which provides that counties shall not be liable in such circumstances unless they have first entered into an agreement with the Highway Department, and then only to the extent of such agreement. In *Shelby County v. Adams,* 15 Tenn.App. 66, the Court held that T.C.A. 54-511 does not apply to disputes between a county and a property owner, and that the prior rule that regardless of who actually takes possession of land for highways, the county is responsible to the owner of the land taken, still applies. See also *Phillips v. Marion County et al.,* 166 Tenn. 83, 59 S.W.2d 507; *Marion County v. Tydings et al.,* 169 Tenn. 286, 86 S.W.2d 565.

"For the reasons and upon the authorities indicated, the Court is of opinion and holds that the defendant City is not liable to the plaintiffs and that the demurrer must be sustained.

"An appropriate order will be prepared and approved by counsel. This Memorandum Opinion will be filed and is hereby made a part of the record in this cause.

"/s/ W. Wayne Oliver

"Judge."

On January 18, 1962, which was after the Court had rendered its Memorandum Opinion, but before the formal Order went down, the Plaintiffs moved to amend their original declaration, which motion was overruled and disallowed by the Court upon the grounds that the motion to amend was not made until after the Court had acted upon the demurrer and because of the further consideration that the proposed amended declaration was also cast as a reverse condemnation proceeding predicated upon a taking of the Plaintiff's property or a property right of ingress and egress incident to the construction of the State Highway by the State of Tennessee for which the Defendant municipality is not liable under the authority cited in the Court's Memorandum Opinion.

Certain maps have been introduced and agreed on by the parties that the same fairly represent the condition before part of Broadway was abandoned and afterwards. It is not insisted by the Plaintiffs that their entire right of ingress and egress has been affected, but only from one direction.

After the Court sustained Defendant's demurrer, the Plaintiffs moved to amend their original declaration, the most material part of the amendment being the allegation that the governing body of Lenoir City passed a resolution whereby they agreed to cooperate with the State Highway Department in the construction of the

road and that the City would close Broadway Martel Road between the T.V.A. access road and Oak Street and that proper ordinances would be put into effect to comply with the request of the Highway Department. The Plaintiffs insist that the City has allowed said street to become unsightly and that erosion taking place, all of which has damaged Plaintiffs' property. As previously stated, the Court overruled the Plaintiffs' motion to amend upon the ground that the issues had been joined and the amendment came too late.

Trial judges have a broad discretion in matters of amendment. *State ex rel. Chanaberry v. Stookesbury,* 176 Tenn. 687, 145 S.W.2d 775. The matter of allowing amendments under our statutes is within the discretion of the Court and these amendments may be allowed at any stage in the proceedings before a case is finally submitted to the jury or at any time before judgment. *Hunt v. Foley,* 9 Tenn.App. 96. One of the older cases in Tennessee which seems to be in point on the question of allowing an amendment after the Court had ruled on a demurrer is the case of *Crowder v. Turney,* 43 Tenn. 551. In this cause the Complainant had filed a bill in the Chancery Court at Sparta to which the Defendant demurred. Upon the hearing of the cause upon the demurrer, the Chancellor sustained the demurrer and dismissed the bill. On the same day Complainant moved the Court for leave to amend his bill, which motion was refused. The action of the Chancellor was upheld by the Supreme Court. Courts have wide discretion in allowing amendments to declarations. *Forgey v. Wallin,* 197 Tenn. 20, 270 S.W.2d 342; *Troutt v. Troutt,* 35 Tenn.App. 617, 250 S.W.2d 372.

One of the more recent cases where this question is

involved is the case of *Caccamisi v. Thurmond,* 39 Tenn. App. 245, 282 S.W.2d 633, wherein it is stated:

"In any case, the allowing or refusing an amendment to pleadings is within the sound discretion of the Court and will not be reversed unless that discretion is abused; such discretion has been seldom adversely reviewed on appeals; and it will be presumed that allowing or refusing an amendment was done in the exercise of legal discretion, in the absence of a showing to the contrary. *Plantt v. Plantt,* 28 Tenn.App. 79, 186 S.W.2d 338; *Payne v. Eureka Security Fire & Marine Ins. Co.,* 175 Tenn. 134, 133 S.W.2d 456; *Chattanooga Ice Delivery Co. v. George F. Burnett Co., Inc.,* 24 Tenn. App. 535, 147 S.W.2d 750; Williams Code of Tenn. 8711; *Reagan v. McBroom,* 164 Tenn. 476, 51 S.W.2d 995."

■ Based upon the foregoing authorities, we conclude that the Trial Judge did not abuse his discretion in refusing to allow the amendment to the original declaration. This disposes of Assignment of Error No. 4.

■ The other three assignments of error deal with the closing of the street and whether or not the officials of Lenoir City agreed to the closing or abandonment of same. We conclude that the original declaration did not state a cause of action against the Defendants, and, as we have also concluded that the Trial Judge did not abuse his discretion in refusing the amendment, we are not passing on the amended declaration.

For the foregoing reasons, all assignments of error are overruled and the action of the Trial Court is affirmed.

The costs of the appeal are adjudged against Plaintiffs and the sureties on their appeal bond.