# YELLOW CAB, INC. OF MORRISTOWN v. LILLIAN YORK.

# YELLOW CAB, INC. OF MORRISTOWN v. ROY YORK.—427 S.W.(2d) 854.

Eastern Section. November 7, 1967.

Certiorari Denied by Supreme Court February 5, 1968.

178

S. J. Anderson, Morristown, for plaintiff in error.

Capps & Oakley, Morristown, for defendants in error.

COOPER, J.   These suits, which were consolidated for trial, arose out of an automobile-cab collision which occurred on November 6, 1966, on West First North Street at its intersection with High Street in Morristown, Tennessee. The plaintiff, Roy York, filed suit to recover damages sustained when the automobile he was driving was struck in the rear by a cab owned by the defendant Yellow Cab, Inc. and driven by the defendant Paul Seals. York's wife, Lillian York, also filed suit to recover damages for personal injuries she received in the accident.

On trial, the jury awarded the plaintiffs verdicts against both defendants, Mrs. York being awarded $4,000.00 and Roy York being awarded $2,000.00.

The defendant Yellow Cab, Inc. appealed, directing its several assignments of error (1) to the court's failure to direct a verdict, (2) to the court's rulings on the admission of evidence, (3) to the court's action in permitting the plaintiffs to amend their declaration in the absence of counsel for the defense and after the close of proof, and in permitting argument to the jury to begin during the absence of counsel for the defendant, and (4) the court's charge.

No appeal was taken by the defendant, Paul Seals.

Yellow Cab, Inc. insists on appeal that there is "no evidence of agency on which the jury could base a verdict against [it]—that the undisputed evidence shows that Seals was not working for the Cab Company at the time

the accident occurred, but was driving the cab on a mission of his own and without permission of his supervisor.'' The plaintiff insists that the witnesses who testified that Seals was not the agent of the defendant, Yellow Cab, Inc., at the time the accident occurred were impeached on material matters, and that, as a consequence, the presumption arising from proof of ownership of the cab was sufficient to require the submission of the case to the jury and supports the jury's finding.

An examination of the bill of exceptions reveals that there was no question but what the automobile accident giving rise to these suits, with resulting injuries to the plaintiffs, was proximately caused by the negligence of the defendant Paul Seals. It was also undisputed that the defendant Yellow Cab, Inc. owned the cab which Mr. Seals was driving. Upon proof of these facts, without more, there arose under our statute (T.C.A. Sec. 59-1037), as amended, a *prima facie* case or presumption that Mr. Seals was the agent and servant of the Yellow Cab Company, and that the use being made of the cab was within the course and scope of Mr. Seals' employment. Haggard v. Jim Clayton Motors, Inc., 216 Tenn. 625, 393 S.W.2d 292; Sadler v. Draper, 46 Tenn.App. 1, 19, 326 S.W.2d 148.

The presumption, or *prima facie* case, of respondeat superior created by proof of ownership of the automobile involved in the accident is displaced, as a matter of law, by material evidence to the contrary of the presumed fact (i.e., operation of the automobile in defendant's service), where such evidence is uncontradicted and comes from witnesses whose credibility is not in issue. McConnell v. Jones, 33 Tenn.App. 14, 228 S.W.2d 117; McParland v. Pruitt, 39 Tenn.App. 399, 284 S.W.2d

299; Sadler v. Draper, 46 Tenn.App. 1, 326 S.W.2d 148. However, if the witness offering the evidence in rebuttal of the presumption is contradicted on any material point, the trial court may not hold as a matter of law that the statutory presumption has disappeared and direct a verdict, but must permit the jury to decide if the witnesses' testimony overcomes the presumption. Haggard v. Jim Clayton Motors, Inc., 216 Tenn. 625, 393 S.W.2d 292, and numerous cases there cited. The court in Welch v. Young, 11 Tenn.App. 431, explained:

"* * * [O]rdinarily the testimony of a witness who is not contradicted, impeached, or discredited must be accepted as true, but that if the witness relied upon to establish a given fact be impeached (by evidence directed against his general character for veracity) or discredited in any of the modes recognized by law, that fact may not be treated as established as a matter of law or for purposes of a motion for peremptory instructions. 11 Tenn.App. at 440.

"If, in this process of sifting the testimony and the witnesses, the jury found that Brawner had testified falsely about material facts as to which he was contradicted by other witnesses, it was within the province of the jury to reject testimony of Brawner which was not directly contradicted by the testimony of other witnesses. This is merely an application of the ancient maxim, falsus in uno falsus in omnibus." 11 Tenn.App. at 441.

Judge Anderson, after holding in Southern Motors, Inc. v. Morton, 25 Tenn.App. 204, 154 S.W.2d 801, that the statutory presumption had disappeared, explained the effect of the presumption:

"Now, we do not intend to imply that even where a witness giving testimony opposed to the statutory presumption is impeached or otherwise subjected to a discrediting attack, this presumption remains in the case in the sense that it is to be weighed by the jury along with the evidence in determining wherein lies the preponderance with respect to the issue involved; for we do not believe that to be true. Upon the other hand, the fact that the rebutting evidence comes from impeached or challenged sources otherwise assailed merely prevents the destruction of the presumption, permitting it to operate in the sense that by reason thereof the judge cannot take the question from the jury, thus leaving it to that body to pass upon the credibility of the witnesses under fire by giving to their testimony the weight they think it is entitled to or rejecting it altogether, just as they see fit and proper; but the point is, that in doing this they are not to consider or be influenced by the presumption. If the challenged testimony be rejected by the jury, then upon the strength of the presumption the finding on that question ought to be for the plaintiff: for the rejection of the testimony would leave no counter-evidence in the case; conversely, if the testimony be accepted notwithstanding the attack upon its source, the finding ought to be for the defendant; for such acceptance validates the testimony so that it destroys the presumption and renders it unavailable for weighing against the counter-evidence or for any purpose." 25 Tenn. App. at 214, 154 S.W.2d at 807.

In the instant case, the record shows that Paul Seals was regularly employed as a dispatcher for the defendant cab company on week-ends. Occasionally, when business

demanded, Mr. Seals drove a cab and, on occasion, he transported cabs from the cab-storage lot at the Colonial Motel to the main cab-stand in downtown Morristown. According to Mr. Seals, he had never been required to have permission to take the cabs from the motel storage lot to the cab-stand. Mr. Hartman, the manager of Yellow Cab, Inc., testified however that cabs were moved from the storage lot only on his instructions.

Both Mr. Seals and Jack Hartman testified that Mr. Seals reported to work on the day the accident occurred and undertook to perform his duties as a dispatcher; that within minutes thereafter, Mr. Seals 'phoned Mr. Hartman, who had returned to the Colonial Motel, reported he was sick, asked to be relieved of duty for two or three hours, and sought and was granted permission to sleep in the rear of a cab on the downtown cab stand.

Mr. Seals testified that he found the cab at the cab-stand to be without a heater and had another cab driver, whom he identified in the pre-trial deposition as J. Oliver and on trial as Bobby Dickerson, take him to the Colonial Motel to get the cab involved in the accident; that it was his intention to take the cab back to the regular stand, and go to sleep in the back seat. The accident occurred on the direct route from the Colonial Motel to the main cab-stand. Mr. Seals testified that his illness resulted from taking a prescribed medicine, but admitted that he was arrested by the officer who investigated the accident on a charge of driving while under the influence of an intoxicant and that he was convicted of the charge. The investigating officer also testified that Mr. Seals was intoxicated.

Mr. Hartman testified that he had no contact with Mr. Seals from the time Mr. Seals asked to be relieved of his

duties as dispatcher and the accident, and denied seeing
Mr. Seals at the motel at any time on the day of the
accident. This was shown to be in contradiction to the
statement of Mr. Hartman in a pre-trial deposition that
he had told Paul Seals when he came to the motel "don't
drive the car, you are in no condition to drive the car,
* * *" Mr. Hartman, in explanation, stated that the state-
ment attributed to him was made by the cab driver that
took Mr. Seals to the motel; however, it is interesting to
note that the cab driver, though he appeared as a witness,
was not asked if he had made the statement.

Then too, Mr. Seals testified that he saw Mr. Hartman
at the Motel on the day of the accident, as follows:

"Q. Did you have any conversation with Mr. Hart-
man down at the Motel?

A. Not that I remember.

Q. OK, now, you remember we discussed that on
your pre-trial deposition?

A. (No answer)

* * * * * * *

Q. Now, do you recall Mr. Anderson asking you on
the occasion of taking your pre-trial discovery
deposition—where were you when you had this
conversation with Mr. Jack Hartman? Ans. At the
Colonial Motel. You did speak to him down there
and you did see him down there didn't you?

A. I don't remember if it was at the time I got in
the car, or maybe I'd been down there before. I'm
not sure, but I seen him one time down there
that day.

Q. And he asked you—In what car were you going to sleep in, and your answer was, the one that I took back, started back to stand in, was that your answer?

A. Yes Sir."

We think it is unnecessary to delve further into the record to show that the answers of Mr. Seals and Mr. Hartman were so evasive and contradictory on material matters that the trial court was precluded from holding as a matter of law, that the statutory presumption of agency arising from proof of ownership was displaced, and acted properly in permitting the jury to decide if the testimony of these witnesses overcame the presumption.

■ In its third assignment of error, Yellow Cab, Inc. insists that the trial judge erred in sustaining objections by the plaintiffs to questions designed to determine if Jack Hartman had authorized or instructed Paul Seals to take the cab involved in the accident. We think the questions were competent and pertinent to the issues, but find no prejudicial error in the court's rulings as the defendant, through adroit questioning, was able to get the wanted information to the jury.

■ Yellow Cab, Inc. also charges in assignments 5 and 6 that the trial judge erred in permitting a material amendment to be made to plaintiffs' declarations in the absence of counsel for the defendants after the close of proof and in permitting argument to the jury to begin in the absence of counsel for the defendants. It is insisted that the amendment was not within the discretion of the court, and that the actions of the court in proceeding with the trial in the absence of counsel for the defendant indicated to the jury that the "trial judge was con-

temptuous of the absent lawyer, his case and his clients.'' We cannot agree with either insistence.

The record shows that after the court had ruled on the defendants' motion for a directed verdict, counsel asked for and was granted ''a couple of minutes recess.''

Court convened thereafter, the lapse of time is not shown in the record, and the plaintiffs were permitted to amend their declarations to charge that Paul Seals ''was operating the vehicle while under the influence of an intoxicant.'' Evidence had been admitted on this issue, without objection, during the course of trial. Counsel for the plaintiffs then began his argument to the jury.

Sometime thereafter, the record again is silent as to the time, counsel for the defendants interrupted the argument to inquire of the amendment and noted his objection to the court's action in allowing the amendment. No objection was made to the fact that plaintiff's counsel was permitted to begin argument in absence of counsel for the defense nor was a motion for a mistrial made.

The scope of the rule relating to the discretion of a trial judge in allowing or disallowing amendments was recently stated by the Court in Daniels v. Talent, 212 Tenn. 447, 370 S.W.2d 515, to be:

''Trial judges have a broad discretion in matters of amendment. State ex rel. Chanaberry v. Stookesbury, 176 Tenn. 687, 145 S.W.2d 775. The matter of allowing amendments under our statutes is within the discretion of the Court and these amendments may be allowed at any stage in the proceedings before a case is finally submitted to the jury or at any time before judgment. Hunt v. Foley, 9 Tenn.App. 96.'' 212 Tenn. at 462, 370

S.W.2d at 522. See also Womble v. Walker, 216 Tenn. 27, 390 S.W.2d 208, 211, and T.C.A. 20-1505.

In Caccamisi v. Thurmond, 39 Tenn.App. 245, 282 S.W.2d 633, it is pointed out that the exercise of discretion by a trial judge in matters of amendment

"has been seldom adversely reviewed on appeals; and it will be presumed that allowing or refusing an amendment was done in the exercise of legal discretion, in the absence of a showing to the contrary."

In our judgment, the record in this case does not show an abuse of discretion upon the part of the Trial Judge in allowing the amendment. The amendment did no more than to make the declaration conform to the proof.

■ Counsel for the defense does not cite us to anything in the record that would tend to support his charge that the action of the trial judge in continuing the trial in the absence of counsel for defense indicated that the "trial judge was contemptuous of the absent lawyer, his case and his clients," nor have we been able to find such an indication. To us, from the record, it is just as logical to believe that the trial judge's action was inadvertent and due only to his failure to note counsel's absence. But even if the action of the trial judge had been intentional, we can not say from the record in this cause that it was prejudicial to the defendant's interest in any way, and we note that the issue of prejudice is not even argued in defendant's brief.

In the case of Tiffany v. Shipley, 25 Tenn.App. 539, 161 S.W.2d 373, 376, this court in passing upon an assignment based upon the conduct of the trial judge said:

"It is well settled that this court cannot reverse for error unless it affirmatively appears from the record

that the error was prejudicial and affected the result of the trial. Thomason v. Trentham, Adm'r, 178 Tenn. 37, 154 S.W.2d 792, 138 A.L.R. 461.''

See also, Searcy v. Simmons, 35 Tenn.App. 598, 250 S.W.2d 109, wherein it is pointed out:

''We cannot presume that the defendant was adversely affected by the conduct of the trial Judge.''

■ Yellow Cab, Inc. insists in its assignment 7 that ''the charge of the court, taken as a whole is error and prejudicial to the defendants. This assignment is too general and indefinite to merit consideration and is overruled. Long v. Tomlin, 22 Tenn.App. 607, 125 S.W.2d 171.

■ In the 8th assignment, it is insisted that the trial judge erred in failing to charge the several special requests submitted. Counsel does not state in the assignment or in the brief wherein the failure to give the requested instructions was error or how it prejudiced the defendants. Consequently, the assignment is overruled without discussion. See Memphis Casting Works v. Bearings & Transmission Co., 35 Tenn.App. 164, 243 S.W.2d 145, p. 149.

Judgments affirmed. Costs incident to the appeal are adjudged against the defendant, Yellow Cab, Inc., and its surety.