**TERMINAL TRANSPORT COMPANY, INC., Plaintiff-Appellant,**

v.

**CLIFFSIDE LEASING CORPORATION, Clifton B. Smith, II and Kenneth P. Kemper, Defendants-Appellees.**

Supreme Court of Tennessee.

Feb. 12, 1979.

Dan E. McGugin, Jr. Watkins, McGugin, McNeilly & Rowan, Nashville, for plaintiff-appellant.

Gary E. Crawford, Thomas H. Peebles, III, Trabue, Sturdivant & DeWitt, Nashville, for defendants-appellees.

ALLISON B. HUMPHREYS, Special Justice.

Terminal Transport Company, a common carrier of freight by tractor-trailer trucks, operating in several states, brought suit in chancery against Cliffside Company and others, (the others are no longer in the suit) to recover $350,000 that Terminal had paid in settlement of a personal injury action brought against it in an Alabama federal court by Terry Mallett. Mallett had been severely injured when his car was struck from the rear by a truck tractor that belonged to Terminal and was being driven at the time by Kenneth Kemper, a Cliffside mechanic. Cliffside was the operator of a truck stop which, pursuant to a written memorandum, made necessary minor mechanical repairs to Terminal's trucks, fueled its tractors from Terminal's tanks that were maintained on its property, and furnished other necessary service.

The Alabama suit was brought against Terminal, which was subject to service of process in that jurisdiction, and against Kemper, who was not subject to such process and who in fact was never served. Cliffside was not made a defendant in that suit. Terminal, as stated, settled the case for $350,000 and brought this suit in Davidson Chancery Court to recover from Cliffside on the theories that it was due indemnity as a matter of contract and as a matter of common law. (The question of liability to indemnify by contract is no longer before the Court, both the Chancellor and the Court of Appeals having held that there was no contract, and no error having been assigned here on that holding.) Cliffside denied liability and filed a third party claim against Terminal's insurer, Liberty Mutual Insurance Company, alleging that if it was liable to Terminal, it was an additional in-

sured under Liberty's policy and Liberty had to hold it harmless against Terminal's claim.

The Chancellor held that as a prerequisite for recovery of common law indemnity, the party seeking indemnity must actually be liable for the sum paid the third party. The Chancellor found that Terminal was not, in fact, liable to the third party, and accordingly was not entitled to indemnification by Cliffside.

The Court of Appeals agreed with the Chancellor that actual legal liability for the payment for which indemnity is sought must be shown, but held that the peculiar facts of this case presented an exception to the general rule, saying,

> where the settler is prima facie liable and where the claimed indemnitor refuses to assist in defense by furnishing available evidence which would exonerate the settler, then such prima facie liability is sufficient to support a recovery for indemnity.

In other words, Cliffside and its employee, Kemper, had within their possession evidence which would have overcome the prima facie liability of Terminal. If they had furnished such evidence, Terminal would have been exonerated, but the same evidence would have fixed liability upon Cliffside. Cliffside chose to withhold such evidence to the detriment of Terminal and to the benefit of itself. Cliffside is therefore estopped to deny that Terminal sustained sufficient liability to support indemnity.

Certiorari was granted to consider this exception to the rule and other assignments of error by Cliffside.

The factual situation out of which all of this grew is as follows: On the night of September 26, 1965, one of Terminal's tractor-trailers pulled into Cliffside's truck stop for servicing and for repair of the alternator. It was turned over to the truck stop mechanic then on duty, Kenneth E. Kemper. Kemper was unable to repair the alternator and so reported to one Lawson, a mechanic at Terminal's Atlanta facility. Lawson, according to his testimony, in-

structed Kemper to get in touch with Terminal's Nashville facility to see whether there was a serviceable tractor there, and if so, to have the facility drive the tractor out to Cliffside. According to Kemper, Lawson instructed him to swap out the tractor, which Kemper understood meant for him to drive it to Terminal's Nashville service facility, and he was attempting to do this when he ran into the rear of a small automobile, seriously and permanently injuring Tony Mallett. It should be noted at this point that there can be no question but that Kemper was the servant of the master, Cliffside, and at the time was discharging the duties imposed on Cliffside by its contract with Terminal. Also, uncontradicted, and actually stipulated, is the fact that Kemper was negligent in his operation of the truck tractor. Moreover, it is uncontradicted that Mallett, who was 18 at the time, suffered most serious and grievous, painful and permanent wounds and injuries; he was left a paraplegic, paralyzed from the waist down, with a lifetime in a wheelchair to look forward to. It also appears that the truck tractor bore Terminal's name on it, bore Terminal's identification numbers, and as Terminal's property was licensed for operation in its name. It has been further stipulated that the settlement Terminal effected with Mallett was, in view of Mallett's injuries, a most advantageous settlement and one that should have been made.

Cliffside assigns error to the holding that Terminal is entitled to common law indemnity from Cliffside, and for the failure to remand the case to the Chancery Court for consideration of Cliffside's third party claim against Liberty Mutual Insurance Company.

The first assignment is predicated upon several propositions of law which, for convenience, we shall consider inversely to their arrangement in the brief.

█ The first proposition is that Terminal is not entitled to indemnity because no benefit was conferred on Cliffside by Terminal paying off the judgment in the Alabama suit.

While it is true the Alabama judgment was paid by Terminal without securing the release of Cliffside, this does not·mean that the settlement of that suit conferred no benefit on Cliffside. The rule in Tennessee is that if a judgment is obtained against one of two or more persons who commit a tort, and that judgment is satisfied, this may be pleaded as a good defense to an action brought by the same plaintiff against any of the others. This proposition is discussed in Caruthers, *History of a Lawsuit,* § 265 (8th Ed. 1963), where several Tennessee cases are cited in support of the text.

■ Cliffside's second proposition is that Terminal had to show that it had actual legal liability to the injured third party it paid in order to recover against Cliffside as an indemnitor.

Under the facts and law, as we see it, Terminal, on the face of the record, had enough liability to the third party, Mallett, to satisfy this rule. According to T.C.A. § 59–1037, the proof that Terminal owned the tractor created a prima facie case of liability, because that statute creates the presumption that the truck tractor was being operated with Terminal's authority, consent, and knowledge, and for its use and benefit within the course and scope of the operator's employment.

T.C.A. § 59–1038 provides that proof of the registration of the truck tractor in Terminal's name was prima facie evidence that the vehicle was operated by Kemper for Terminal's use and benefit and within the course and scope of his employment.

■ While it is the law, as held by the Chancellor and the Court of Appeals, that these presumptions can be displaced by evidence to the contrary, *Yellow Cab, Inc. of Morristown v. York,* 58 Tenn.App. 177, 427 S.W.2d 854 (1967), it is also true that the determination as to whether these presumptions have in fact been displaced is a question for the jury. And, bearing in mind the totality of the circumstances confronting Terminal, (1) that its defense was one that rested upon its acceptance by the jury; (2)

that after Clifton B. Smith, II, President of Cliffside, and Kenneth B. Kemper had agreed to attend the trial in Alabama and testify for Terminal, they declined to go through with their agreement at the last minute, leaving Terminal with only the benefit of the depositions of these parties taken in the first instance by the Alabama plaintiff, Mallett; and (3) Mallett's terrible injuries and his total freedom from fault, more than enough to cause the most flinthearted jury to strive in every way possible to decide in his favor and, undoubtedly, in a much larger amount than that by which the case was finally settled; we think the conclusion is inescapable that the jury would have found Terminal liable. Thus, there did exist such liability on Terminal's part to satisfy the rule. The question of the existence of liability must be answered by probabilities as they existed at the time of settlement, not by consideration alone of the legal effect of facts. This latter course leaves out the part the jury plays and the effect of its verdict. 41 Am.Jur.2d, *Indemnity* § 33, p. 723; *Wisconsin Barge Line, Inc. v. Barge Chem 300,* 546 F.2d 1125 (5th Cir. 1977); *see also Tankrederiet Gefion, A/S v. Hyman-Michaels Co.,* 406 F.2d 1039 (6th Cir. 1969).

This brings us to a consideration of Cliffside's third proposition: that an indemnitee such as Terminal is bound by all findings of fact without which the original judgment against it could not have been rendered, and a suit for indemnity cannot be maintained if one of those findings rested on a fact fatal to his claim for indemnity. Annot. 24 A.L.R.2d 329 (1952). This annotation summarizes the general rule on this aspect of the law of indemnity as follows:

§ 2. *General Rule.*

Irrespective of whether a judgment obtained by an injured person against an indemnitee is conclusive upon the indemnitor under the general rules governing the conclusiveness of judgments, the authorities which have considered the subject of this annotation as a distinct question hold unanimously that an indemnitee, in his action to recover from the indemnitor the amounts paid in satisfac-

tion of a judgment obtained against him by an injured person, is bound by all findings without which the judgment could not have been rendered, and that, if the judgment in the earlier action rested on a fact fatal to recovery in the action over against the indemnitor, the latter action cannot be successfully maintained. 24 A.L.R.2d at 330.

Cliffside invokes this proposition, claiming that because Mallett's suit against Terminal was predicated upon the doctrine of respondeat superior, the judgment in favor of Mallett inferentially establishes that Kemper was Terminal's agent or servant. Thus, since it was uncontradicted and admitted that Kemper was the employee of Cliffside and was performing Cliffside's business at the time of the collision, Terminal and Cliffside were at most joint tort-feasors.

▊ Of course, Cliffside and Terminal being joint tort-feasors, Terminal is not entitled to indemnification; the remedy in Tennessee in cases involving joint tort-feasors is restitution by way of contribution.[1]

The right to contribution rests upon the quality of the negligence of the tort-feasors; the right of one to recover contribution from the other depends upon the nature of his negligence as compared with that of the other tort-feasor.

The exception to the general rule that there can be no contribution between joint tort-feasors was first recognized in Tennessee in the case of *Cohen v. Noel,* 165 Tenn. 600, 56 S.W.2d 744 (1933). In that case a demurrer had been sustained to a declaration that sought indemnification or contribution. Chief Justice Green affirmed the general rule that tort-feasors equally guilty of negligence or wrongdoing cannot have contribution, one from the other, but held

that this general rule was subject to the quite reasonable exception that, where the negligence of one tort-feasor was active while that of the other tort-feasor was passive, the tort-feasor guilty only of passive negligence could have contribution from the other. This proposition has been elucidated upon in subsequent cases. *E. g., Cohen v. Noel,* 21 Tenn.App. 51, 104 S.W.2d 1001 (1937), (which involved the same cause of action as the Supreme Court case). In *Davis v. Broad Street Garage,* 191 Tenn. 320, 232 S.W.2d 355 (1950), the *Cohen* exception was discussed and elaborated upon, and Justice Chambliss' opinion in *Graham v. Miller,* 182 Tenn. 434, 187 S.W.2d 622 (1945) was approved. In *Graham,* Mr. Justice Chambliss quoted from *Union Stock Yards Co. of Omaha v. Chicago, B. & Q. R. Co.,* 196 U.S. 217, 25 S.Ct. 226, 49 L.Ed. 453, 2 Ann.Cas. 525 (1905) the following:

"[t]hat, notwithstanding the negligence of one, for which he has been held to respond, he may recover against the principal delinquent where the offense did not involve moral turpitude, in which case there could be no recovery, but was merely *malum prohibitum,* and the law *would inquire into the real delinquency of the parties, and place the ultimate liability upon him whose fault had been the primary cause of the injury.*" (Emphasis supplied.) 182 Tenn. at 439, 187 S.W.2d at 624–5.

The *Davis* opinion also quotes with approval the following from Prosser, *Torts,* at 1114:

"There is obvious lack of sense and justice in a rule which permits the entire burden of a loss, for which two defendants were equally, unintentionally responsible, to be shouldered onto one alone, according to the accident of a suc-

---

1. *Builders Supply Co. v. McCabe,* 366 Pa. 322, 77 A.2d 368, 24 A.L.R.2d 319 (1951), after stating the general rule as we have above, the opinion goes on:

    It being clear, then, that plaintiff's own negligence as a contributing factor in the accident is established by the record in the Ohio case, and since therefore it cannot recover *indemnity* from defendant on any theory of primary

    and secondary liability or of comparative degrees of negligence, we come to the remaining question whether it can obtain *contribution* from defendant as a joint tort-feasor. *Had the accident occurred in Pennsylvania such a right of recovery undoubtedly would exist.* (Citations omitted) (Emphasis in last sentence supplied) 77 A.2d at 374.

cessful levy of execution, the plaintiff's whim or malevolence, or his collusion with the other wrongdoer, while the latter goes scot free. Half a century of vigorous denunciation has had its effect in the introduction of a number of 'exceptions' which, to some extent, have restored in America the original English rule." 191 Tenn. at 325–26, 232 S.W.2d at 357–8.

To make certain that there be no doubt about the law on this subject in Tennessee, on petition to rehear, in response to a dissent based upon the dissenter's interpretation of *Cohen v. Noel,* 165 Tenn. 600, 56 S.W.2d 744 (1933), the *Davis* Court declared:

> Upon reconsideration and further thought the majority of this Court hold that the rule of law expressed in the majority opinion should be the law of Tennessee and not just applicable to the facts of the instant case. We feel that justice, right and equity demand this conclusion. 191 Tenn. at 330, 232 S.W.2d at 359.

 Having in mind our commitment to allow contribution as a matter of policy under the common law, and having in mind that Terminal's negligence is based on a rebuttable presumption and cannot compare in any degree with the negligence of Cliffside, which is stipulated, we think Terminal makes out a case for contribution.[2]

 The argument that since the liability of both Cliffside and Terminal is based upon *respondeat superior,* their negligence is equal, is unacceptable. The quality of the negligence is not equal for the purpose of determining the application of the *Davis v. Broad Street Garage* principles. In a case for contribution the real inquiry is which of the two parties is primarily responsible for the injuries. The answer in this case has to be that Cliffside is that party.

 Under our rule, which allows consideration of the quality of the negligence of the parties, we must hold that in vicarious negligence cases the quality of negligence depends upon who is the real master of the servant.

Though only remotely analogous, it would seem that since the law, in order to do justice, allows an inquiry into the quality of the servant's negligence, and thereon fixes liability of the master for punitive damages, we are authorized, in order to do justice, to inquire into the quality of the vicarious relationships involved and to determine whether one is actual and real, and so active for the purposes of contribution, while the other is not of that quality. To hold otherwise, we would have to say that there can be no contribution between vicarious joint tort-feasors, virtually emasculating the rule without good reason.

The case is remanded to the Chancellor to determine the amount of contribution Cliffside shall make to Terminal and whether or not Cliffside is an additional insured under Terminal's insurance policy with Liberty Mutual Insurance Company.

HENRY, C. J., and FONES, COOPER and BROCK, JJ., concur.

---

2. The complaint is broad enough to authorize an award on this ground. Neither indemnity nor contribution is mentioned therein. Recov-

ery is sought on the facts. The prayer is for a decree for $350,000.00 and for general relief.